FRETHEY v. DURANT.

(Supreme Court, Appellate Division, First Department.   December 31, 1897.)

1. TRUSTEE—ACCOUNTING.

Where a fiduciary relation has been created or assumed by the person acting as agent or trustee thereunder, and the principal or cestui que trust is not informed and does not know what has been done with reference to the property or interests thus confided to the care of the agent or trustee, the principal is entitled to an accounting.

2. SAME.

, In such a case it is not essential to the maintenance of an action for an accounting for the principal to show affirmatively that the agent has failed to account for and pay over moneys belonging to him, nor even to show that something will be found due him upon the accounting.

**3. Res Judicata.**

A person largely interested in the stocks and bonds of a company own-
ing large tracts of land, and in mortgages for large amounts, and other
securities, none of which stood in his individual name, died intestate, leav-
ing a son and daughter. Under an agreement between these children, the
son became the agent and trustee of his sister to take any and all proceed-
ings and do any and all things essential to secure, not only his own, but
also her, interest in the property, equitable or otherwise. He also became
administrator of the father's estate, and, as such, accounted for the prop-
erty that came to his hands as administrator, upon the basis of an inven-
tory made and verified by himself, and not including the interests above
mentioned. In an action by the sister for an accounting under the agree-
ment, *held,* that the decree of the surrogate was not a bar, under Code Civ.
Proc. § 2742, etc.

Appeal from special term.

Action by Heloise H. Frethey against William W. Durant. From
a judgment dismissing plaintiff's complaint, she appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,
WILLIAMS, and PATTERSON, JJ.

John E. Parsons, for appellant.

H. W. Simpson, for respondent.

WILLIAMS, J. The action was brought to compel an account-
ing, and to recover the amount to which the plaintiff should, by such
accounting, be entitled to. The claim made was that the defendant
was intrusted by the plaintiff, as her agent and attorney in fact,
with valuable property interests, which he took charge of, and out
of which he realized a large amount of money which belongs to
plaintiff, but which defendant refuses to account for or pay over to
her. The complaint was dismissed on the ground, as stated in the
decision of the trial court, that the plaintiff had failed to prove any
cause of action against the defendant. Dr. Thomas C. Durant died
October 5, 1885, leaving a widow and two children, the plaintiff and
defendant, him surviving. He left no will. At the time of his
death the deceased was largely interested in the stock and bonds
of the Adirondac Railroad Company, and the property of the com-
pany consisted of some 508,000 acres of land and a partially con-
structed railroad. The deceased kept the stock certificates and the
certificates for the bonds in his own name as agent. He was also
largely interested in three mortgages, two of which were given—
one by Rosekrans, and the other by Cheney—upon 400,000 acres of
land, for the sum of $300,000 in all. There were also other stocks
and bonds which stood in the name of the widow of the deceased,
and in the name of the deceased, as trustee for the plaintiff. All
these certificates for stock and bonds, and the mortgages, were in
the possession of the deceased at the time of his death, and it did
not clearly appear what interest the deceased really had in these
items of property. In form they did not stand in deceased's name,
so that they would necessarily pass to his personal representatives.
The defendant had been associated with the deceased, his father,
before his death, and was in a position to know all about these
pieces of property, and what the real interest therein of the deceased
was at the time of his death. The plaintiff was inexperienced in

business, and knew little or nothing about her father's property before his death.    The defendant, her brother, told her, before the deceased died, that there was a judgment against deceased's property by the Crédit Mobilier, but that deceased had arranged it so that the creditors would not take the property, and the plaintiff and defendant would have it after awhile; that the property was very large, a great many hundred thousand acres of land, and the property amounted to over a million dollars.    After the death of the deceased, the plaintiff was called into the room where the defendant and the widow were, and there, in their presence, and in the presence of Mr. Hall and Mr. Barker, the plaintiff was asked to make the defendant her agent and attorney with reference to the property and estate of the deceased, their father.    And, upon the evidence given in the case, it sufficiently appeared that the plaintiff did there confide and intrust to her brother (the defendant) the care and management of her interests in her father's estate, whatever they may have been.    It is not necessary to recite in detail the plaintiff's evidence as to the nature of that interview, nor to determine whether the confidential relations between the plaintiff and the defendant were created by writing or parol.

In the absence of the evidence of the other parties to that transaction, which was not taken on the trial, the evidence of the plaintiff sufficiently established the relations which the plaintiff claimed had been created, and in reliance upon which she subsequently rested, without looking after such interests herself, or employing others to look after them for her.    The defendant was made the administrator of his father's estate, and the result was that very little property was received and administered by him as belonging to the estate, while the large interests connected with the railroad and lands and mortgages were so managed and disposed of that the defendant and his wife apparently became possessed of large means, while the plaintiff remained substantially without property or means to afford her a comfortable support.    It will not be necessary to go over the evidence offered by the plaintiff in detail, the documentary testimony, the letters which passed between the parties and between the defendant and others than the plaintiff.    We have examined all the evidence with care, and have come to the conclusion that enough appeared in the case to establish the fact that the fiduciary relation claimed by the plaintiff was created and existed between her and her brother (the defendant); and, this being so, the court should have ordered an accounting by the defendant with reference to the property and interests of every kind which he took possession of at the time of his father's death, and has since managed, conducted, and disposed of, under the trust arrangement.    It was not incumbent upon the plaintiff to show affirmatively that the defendant had failed to account for and pay over to her moneys belonging to her as an heir of her deceased father.    It is well settled that when a fiduciary relation is shown to exist, and property or property interests have been intrusted to an agent or trustee, the burden is thrown upon such agent intrusted to render an account, and to show that all his trust duties have been fully performed, and the manner in which they have

been performed. It is assumed that the agent or trustee has means of knowing, and does know, what the principal or cestui que trust cannot know, and is bound to reveal the entire truth. Marvin v. Brooks, 94 N. Y. 71. It is not necessary in such a case as this that the plaintiff should show that there will be something found due to her on the accounting. That fact can never be known with certainty until the account has been taken. The right to this accounting results from the facts that the fiduciary relation has been created and assumed by the agent or trustee, and that the principal or cestui que trust is not informed, and does not know, what has been done with reference to the property or property interests confided to the agent or trustee.

We do not think the surrogate's decree is a bar to the accounting sought in this action. The accounting before the surrogate was as to the property that came to the hands of the defendant as administrator, and was based upon the inventory made and verified by the defendant. It did not purport to relate to the property or property interests involved in this action. The agreement between these parties was, in effect, that the defendant should take any and all proceedings necessary, and do any and all things essential, not only to secure his own, but also his sister's (the plaintiff's), interest in the property, equitable or otherwise. The accounting is to be had under the agreement with reference to this property, and is to be an accounting between these parties as individuals, and not by the defendant as personal representative of his father's estate.

There was no adjudication upon the accounting before the surrogate as to this property or the property rights here involved. Certainly, there could have been no adjudication as to interests in real property, because the administrator had nothing to do with such interests; and, until the accounting is had, it will not be known whether any of the property interests as to which an accounting is had are in the nature of real property. The surrogate's decree is conclusive upon the parties only so far as it is declared to be by the provisions of Code Civ. Proc. § 2742, etc.; and we are aware of no provisions making it conclusive as evidence, or as a judgment with reference to the questions involved in this action.

Our conclusion is that the trial court erroneously dismissed the complaint in this action, and that the judgment appealed from should be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.