(44 App. Div. 381.)

### ROSE v. DURANT.

(Supreme Court, Appellate Division, First Department. November 17, 1899.)

1. ACCOUNT—FIDUCIARY RELATIONS—EVIDENCE.
    Under an agreement between a brother and sister the latter intrusted the management of her interest in her father's estate to the former, who, on a proceeding for an accounting to overthrow plaintiff's testimony as to a fiduciary relation between them as to all the property contended that such relationship was confined to certain securities, which were in the father's name as trustee for plaintiff. The power of attorney was not limited to such property, and plaintiff was lead to believe by defendant that it constituted him her agent as to all the property, and, acting on such belief, employed no one else to manage her interest, and defendant permitted her to so act under the impression that he would protect all her interest. *Held* sufficient to sustain a finding of a fiduciary relationship between them as to all her interest.

2. SAME—JUDGMENT FOR ACCOUNTING.
    On a finding that such a fiduciary relationship existed, a judgment for accounting was proper.

3. SAME—DEFENSES.
    On a proceeding for an accounting under an agreement between plaintiff and defendant as to an estate of which the latter was administrator, to make a defense that a decree of the surrogate on defendant's accounting as administrator was conclusive on plaintiff available, the surrogate being a court of limited jurisdiction, defendant should allege either the jurisdictional facts, or that the decree was duly entered in a proceeding in which the surrogate had jurisdiction.

4. SAME—OBJECTION TO ORDER FOR ACCOUNTING.
    On a proceeding for an accounting from defendant, as manager of plaintiff's interest in the estate of an intestate, a sufficient answer to an objection that the court, in ordering the accounting, did not specifically state that intestate had interests in the property at his death, is that the issue was whether plaintiff was entitled to the accounting, it being the duty of the referee to state the interests of intestate.

**5. SAME—PARTIES.**
Defendant in a proceeding for an accounting failing to object to the proceeding for want of proper parties, either by demurrer or in his answer, cannot urge such objection either on the trial or on appeal.

**6. SAME.**
It is no objection to an order for an accounting that there were other persons interested, who were not parties, for the referee can in his report, it appearing that there were others interested, make provision for their protection.

Appeal from special term, New York county.

Action by Heloise Durant Rose against William West Durant. From an interlocutory judgment entered on a demurrer at special term ordering a reference for an accounting to plaintiff from defendant, the latter appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Carlisle Norwood, for appellant.
John E. Parsons, for respondent.

O'BRIEN, J. A summary of the facts underlying this controversy is unnecessary in view of the opinion on the former appeal, where they are stated. Frethey v. Durant, 24 App. Div. 58, 48 N. Y. Supp. 839. The principal question for determination is, was it proved that a fiduciary relation existed between the plaintiff and the defendant? Upon the former appeal, where a judgment dismissing the complaint was reversed, it was held that the testimony then adduced by the plaintiff justified the conclusion that such a fiduciary relation existed. At the second trial evidence was introduced by the defendant to overthrow the plaintiff's upon the question of a fiduciary relation, by which he sought to establish that such relationship was confined to that property consisting of certificates for bonds and stocks of the road which stood in the father's name as trustee for the plaintiff. In support of this contention, great stress is laid upon the wording of the power of attorney executed and delivered by the plaintiff to the defendant. The language employed in the power of attorney is not limited to the property which stood in the father's name as trustee for the plaintiff, and, if she is to be believed,—as she was by the trial court,—she was led to think from the representations made her that it constituted the defendant her agent and attorney in respect to all the property left by the father. As it was prepared and presented to her by the defendant, she is not to be bound by the strict terms of the instrument, but it is to be construed in the light of what it was represented to her to be. In other words, having executed it without legal advice, and on the faith of what was told her, she has a right to have it construed as she was induced to believe it really was. That she acted on the belief that the power of attorney and the verbal assent which she gave to her brother conferred upon him the exclusive management of her father's estate and of her interest therein, is evidenced by her entire conduct thereafter. She employed no one else, took no steps to protect her interests, but, confiding in her brother, she left this country for a sojourn in Europe, and only returned when, after repeated efforts, she failed to secure any explana-

tion or accounting of her father's estate from the defendant. Her failure for a long time to demand an account is now urged as an argument against her, it being contended that, if she was entitled to one, she would not have waited so long. It is shown, however, that she made frequent inquiries, and was told that it was inadvisable to stir up matters, because there was a $20,000,000 judgment, which in the event of assets being disclosed, might absorb them all. It is not, by this record, made to appear that there ever was such a judgment, yet the use made of it to stay plaintiff's hand is significant, and characteristic of all the defendant's attitude towards her. He had obtained a power of attorney, he had secured her assent to his management of the estate, he had permitted her to depart for Europe with the impression that he would protect her interests; and thus he was enabled to adopt a policy which gave him the means to run a yacht, and to live in luxury, while his mother (to use her own expression) became thereafter dependent upon him; and his sister, with the exception of the proceeds realized from some securities which were in the father's name when he died, as trustee for her, has never received any benefit from or explanation of the great amount of property which it was supposed in the family that the father possessed. That the defendant, when the father died, was not a man of means, and that, as the result of his management of the railroad property and lands he became wealthy, are not disputed; nor is any explanation offered other than that the wealth came from dealing with property in which the father was in some way interested. When charged with wrongdoing and unfair dealing in the father's estate by his sister, the natural instinct of an innocent man would be to court an inquiry, and seek the opportunity to vindicate himself. Here, however, when, after repeated refusals to give any explanation or accounting, the defendant is brought into court, instead of promptly meeting the charges, numberless objections and obstacles are interposed to the effort to secure or wring from him an accounting.

The defendant's evidence does not outweigh that given by the plaintiff, although upon some minor particulars as to dates and places it was shown that the plaintiff's recollection was not good. Thus, as to when and where the power of attorney was executed,—which is, in one aspect, entirely immaterial,—the plaintiff's recollection was faulty. But there is nothing extraordinary or unusual in this, for many years have elapsed, and upon a detail of that kind she might very well be mistaken, without destroying the force of her testimony as to what actually occurred, or as to what was said by the defendant as an inducement to obtain her signature to the power of attorney, and her assent to the defendant's right to manage the property. Undoubtedly, if the relation between the defendant and his sister was not fiduciary, he could not be compelled to make a disclosure. Whether such a relation existed was, upon conflicting evidence, presented for determination to the judge below; and with his conclusion, after an examination of the voluminous record submitted on this appeal, we do not think we should interfere. Upon the finding that such a fiduciary relationship did exist, the interlocutory judgment for an accounting legally and properly followed; but to what extent, and

for what property, can only be determined upon the accounting. Upon the sale of the certificates for the stock and bonds to the Delaware & Hudson Canal Company there were included certificates which concededly belonged to third parties, and which were in the defendant's hands for the purpose of effecting the sale. There were also certificates in favor of the mother, for which the defendant is accountable to her. There remain, however, certificates which were made out in the name of the father as "agent," but for whom is not made clear. The fact that after the father's death, by direction of the defendant, there was added to the stubs of the certificates a statement that the agency was for the mother, is not conclusive upon the plaintiff. There were, in addition, lands covered by the Rosekrans and Cheney mortgages, which, it appears, were subsequently transferred to a certain timber company. To the extent that these certificates, stocks, bonds, mortgages, and lands belonged to the father the defendant should account, and, less the amount paid out for expenses and a reasonable compensation for services and subject to the rights of creditors, the plaintiff would be entitled to her one-third share. It is insisted that such an action as this could only be brought against defendant as administrator, and that the decree of the surrogate upon his accounting as administrator is conclusive on plaintiff. Both these objections were disposed of on the former appeal, and all we need add to the reasons given for not holding the surrogate's decree conclusive is that no such defense is properly pleaded. As the surrogate's court is of limited jurisdiction, it was necessary to allege either the jurisdictional facts, or that the decree was duly made and entered in a proceeding in which the surrogate had jurisdiction.

There are some findings to which objection is made, and which, if permitted to stand as they are, might leave the referee in some doubt as to the extent to which he might go upon the accounting. To avoid any uncertainty, the findings and decree should be construed as they are susceptible of being construed,—into holding that upon the accounting the referee should proceed to ascertain what proportion of the certificates, mortgages, and lands which came into the possession of the defendant were actually the property of the father, whether in his name, as agent, or otherwise. And the referee can also ascertain to what extent he should account for purchases made of claims, accounts, and judgments against the father, and, in addition, determine what interest she had in property not in the father's name at the time of his death, and which, therefore, did not pass to his administration, but which defendant secured and reduced to his possession by the outlay of sums much less than the value of the properties.

Objection is made because the court did not specifically state that Dr. Durant had interests in the securities and property at the time of his death, and because the court required an accounting with regard to the "Durant interest in the Adirondack Railway Company." It is sufficient to say that the point at issue was whether or not the plaintiff was entitled to an accounting, and it will be the business of the referee to state the interests of Dr. Durant; and the words "Durant interest," it may be inferred, relate to the interests belong-

ing to the Durant family, inasmuch as this suit does not concern outsiders who may have owned securities in the Adirondack property, which, possibly were controlled by Dr. Durant. In decreeing that the plaintiff receive a one-third interest, the intention was to award to the plaintiff a one-third share of what, upon the accounting, should appear to have belonged to her father at his death,—property which, while acting in a trust relation, he secured. The exact nature and amount of this interest the referee, after an accounting, can alone determine.

As correctly said in the former opinion:

"It was not incumbent upon the plaintiff to show affirmatively that the defendant had failed to account for and to pay over to the plaintiff moneys belonging to her as an heir of her deceased father. It is well settled that when a fiduciary relation is shown to exist, and property or property interests have been intrusted to an agent or trustee, the burden is thrown upon such agent intrusted to render an account, and to show that all his trust duties have been fully performed, and the manner in which they have been performed. It is assumed that the agent or trustee has means of knowing and does know what the principal or cestui que trust cannot know, and is bound to reveal the entire truth. Marvin v. Brooks, 94 N. Y. 71. It is not necessary, in such a case as this, that the plaintiff should show that there will be something found due to her on the accounting. That fact can never be known with certainty until the account has been taken. The right to this accounting results from the facts that the fiduciary relation has been created and assumed by the agent or trustee, and that the principal or cestui que trust is not informed, and does not know, what has been done with reference to the property or property interests confided to the agent or trustee."

We do not understand that upon the trial the learned judge found or decided what property, or how much of it, belonged to the father, but only that a fiduciary relation existed, and that the defendant, having undertaken to manage the plaintiff's interests as well as his own, should give an account of his stewardship, and pay over to her her just share of what, upon an accounting, the referee shall determine is due her. To obtain such relief, what was essential to prove was that a fiduciary relation existed, and that there was some property which reached the hands of the agent or trustee for which no account was rendered. Here, not only the first was proved, but the inference is not less certain that there was property for which the defendant should account, and for which no account has been given. Thus the defendant concedes that the plaintiff is entitled to a certain share in the $30,000 forfeited on the Crane contract, and it is made inferentially to appear that the defendant obtained by virtue of his position property which, as shown by the sale to the Delaware Company, resulted in the realization of a large sum of money. In addition, we have the fact appearing that lands on which the certificates were a lien were indirectly conveyed to him. Nor can we escape the conclusion that the manner in which the defendant dealt with the property which was in the name of the father was unauthorized; for instance, the transfer of certificates and of the interest in the mortgages to Mrs. Durant, and the manner in which the outstanding judgments were brought up in the name of the defendant's wife. So, also, the recording of the deeds of the (family) house without authority. These acts, together with the haste with which possession of the prop-

erty was secured, the refusal to give any information to his sister, and the use made of the alleged $20,000,000 judgment against the father,—all of which finally resulted in the defendant's becoming rich and the plaintiff poor, although each were presumably equally entitled to benefit from their father's property,—amply justified the conclusion reached by the learned trial judge that an account should be had.

The only other objection necessary to notice is that the action is defective because the proper parties are not before the court, it being claimed that the creditors of the father and his administrator as such should be parties. The Code provides that, where such a defect appears upon the face of the complaint, objection must be taken by demurrer, and where it does not so appear it must be taken by answer. The defendant, not having availed himself of either of these remedies, was not in a position to successfully urge this objection upon the trial, nor again upon this appeal. Moreover, it will be competent upon the reference, without the presence of such parties, for the defendant to show who, in preference to the plaintiff, would be entitled to payment out of property belonging to the father; and, upon its appearing that there are persons other than the plaintiff and defendant interested in the money or property for which the defendant shall account, the referee can, by his report, make suitable provision for their protection.

Our conclusion is that the interlocutory judgment was right, and should be affirmed, with costs. All concur.

INGRAHAM, J. I concur in the affirmance of this judgment, and wish to add a few words to the opinion of Mr. Justice O'BRIEN. I think the record shows that the authority given to the defendant was given and received for the purpose of enabling the defendant to have a free hand in dealing with all the securities and property which had belonged to the plaintiff's father, or in which the plaintiff had an interest. It is quite evident that the plaintiff had been given to understand that, in consequence of judgments which it was alleged had been recovered against her father, whatever property there was should be dealt with in some way other than the usual method of administration. The power of attorney authorizes the defendant to "sell, transfer, and assign all shares of stock or bonds of the Adirondack Railway Company standing in my name on the books of the said company, or owned by me, and all trustees' certificates for such stock and bonds; to surrender, change, and receive such certificates; and generally to use, manage, and control all my rights and interests in such stock, bonds, and certificates" in said company. The plaintiff testified that she signed this power of attorney after an interview between her mother, the defendant, and herself, at which the defendant stated that, "he being the man of the family, that it was naturally right he should attend to our affairs; that it was to our, my mother, and his interest that the estate should be settled, and to carry out father's intention in these negotiations which had been pending; and he had mother's power of attorney, and he wanted mine for the same purpose; and then, when the road was sold, and the land, that there

would be some debts to be paid, and after that there would be about a million and a half coming to us, and there was just the widow and the two children. The widow would have a third, and the children would divide equally. ✳ ✳ ✳ He had said, before that, we were all in the same boat, and our interests were identical, so that he added at the end that, if I did not sign it, that, of course, we being three, having equal interests, that two could freeze out the other one"; that it was relying upon these statements, and to enable the defendant to realize from the property left by their father, that the power of attorney was executed. The plaintiff further testified that all the proceedings to manage and dispose of all the property left by the father, or in which the plaintiff had an interest, was left to the defendant to manage. That the defendant did take possession of all the property left by the plaintiff's father, as well as all the property to which the plaintiff was entitled, and that he managed and controlled it, is established; and it is difficult to see upon what principle the defendant can refuse to account for the property which came into his hands, belonging to his father, or in which the plaintiff had an interest. By the execution of this instrument the defendant became the agent in fact for the plaintiff, and as such received and administered property which had belonged to the plaintiff, as well as that which had belonged to his father. Whether he received it as his father's administrator, or as his father's successor in some indefinite trust, or as the direct attorney for the plaintiff, acting under the terms of this power of attorney, is not material. What the plaintiff is entitled to is to have an accounting by the defendant of all the property which he received that belonged to her father, or in which she had an interest.

As to the decree of the surrogate's court upon the accounting of the defendant as administrator of the father, it is quite apparent that it is in no way binding upon the plaintiff. In the first place, it is not pleaded as an adjudication. There is no allegation in the answer that this decree would stand in the way of a judgment requiring the defendant to account to the plaintiff for her interest either in the estate of the father or in any other property received by the defendant in which she had an interest. Nor does it appear in the record that the citation to appear in the accounting proceeding was ever served upon the plaintiff, so as to give the court jurisdiction over her. It is sufficient to say, however, that the decree of the surrogate is not pleaded as an adjudication binding upon the plaintiff.