ROSE v. DURANT.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

1. ATTORNEY IN FACT—ACCOUNTING—EVIDENCE.

Evidence on an accounting by defendant, under a power of attorney to manage his sister's interest in her father's estate, reviewed. *Held*, that the referee was warranted in finding that defendant was accountable for certain property claimed to be a part of decedent's estate.

2. SAME—AGENCY—EVIDENCE.

In an accounting by an attorney in fact, a claim that certain bonds and stocks had been held by plaintiff's father as agent for his wife was based on the facts that he had at one time received a small sum of money from his wife, which she had inherited, and that he had used the word "agent" in his dealings in this matter. It was shown that certain bonds had been issued to plaintiff's mother direct; that she had no knowledge of the ownership of the balance during the life of her husband; that the word "agent" in the company's books had in many instances been added by a clerk of defendant; and that defendant had secured this property from his mother without the payment of any consideration, save such as had been derived from the property itself. *Held*, that the referee properly found that this property was part of the estate for which defendant should account.

Appeal from Special Term, New York County.

Action by Heloise D. Rose against William W. Durant. From a judgment for plaintiff entered on the report of a referee, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J.; and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Henry W. Simpson, for appellant.
Henry W. Hardon, for respondent.

HATCH, J. Dr. Thomas C. Durant died intestate on the 5th day of October, 1885, leaving him surviving as his only heirs at law and next of kin his daughter, the plaintiff, his son, the defendant, and his widow, Heloise H Durant, since deceased. Dr. Durant had been the owner of a large amount of property, and at the time of his death it was somewhat involved, and several judgments had been entered against him. This trouble principally grew out of the affairs of the Adirondack Railroad Company, of which he was the president and chief promoter. On the day of his funeral there was a conversation be-

tween the defendant and his mother and sister, in which the defendant stated that as he was the only man in the family the burden of managing the estate would fall upon him, and he desired his mother and sister each to give him a full power of attorney to manage and control the business affairs of the deceased    The mother consented to this, and shortly thereafter she executed and delivered to the defendant such power of attorney.   The plaintiff at first demurred, but after a few days, upon the urgent request of the defendant and her mother, she consented, and without consulting a lawyer she executed a power of attorney and delivered it to the defendant, who immediately entered into possession of all the property of deceased, and was thereafter appointed administrator of the estate.   The plaintiff shortly after the execution and delivery of the power of attorney went to Europe, where she remained for several years.   At different times while the plaintiff was residing in Europe she demanded an accounting of the defendant, which he refused, informing her that there was nothing coming to her on account of their father being so seriously involved, and that there was one judgment against him of $20,000,000.   The deceased had left a valuable property, consisting largely of stocks, bonds, and securities of the Adirondack Company, and its successor corporation, the Adirondack Railroad Company.   These securities embraced mortgages upon Adirondack lands in the names of Enoch H. Rosekranz and Albert N. Cheney.   At the time of Dr. Durant's death certificates for stock and bonds stood in the name of Thomas C. Durant, as agent for the respondent herein, Heloise H. Durant, the widow, and other persons.   The defendant (appellant) has by careful management and clever manipulation secured control of all this property, and has gotten the title thereto in his own name.   The plaintiff returned from Europe, and on July 9, 1895, commenced an action for an accounting against the defendant.   Upon the trial of that action the court dismissed the complaint upon the merits.   The plaintiff appealed, the Appellate Division reversed the judgment, and sent the case back for a new trial.   Frethey v. Durant, 24 App. Div. 58, 48 N. Y. Supp. 839.   A new trial was had, and the court found that the plaintiff was entitled to an accounting, and in an interlocutory judgment entered therein it was directed, among other things, that a referee be appointed to take the proof, and that the defendant make full discovery and account to the plaintiff in respect to the interest of Thomas C. Durant in and to all property which he held either in his name or as agent or in trust for any other person, and that such accounting should contain a statement of any moneys which the defendant used in protecting the estate from claims and judgments and other interests; that the said defendant produce before the referee for examination all books of account, checks, stubs thereof, vouchers, securities, and writings whatsoever which were in the possession of Thomas C. Durant at the time of his death, and all such similar papers which the defendant had himself used or made in the management or control of said property.   The defendant appealed from such interlocutory judgment, and the same was affirmed by this court. Rose v. Durant, 44 App. Div. 381, 61 N. Y. Supp. 15.   On December 27, 1899, the defendant filed with the referee an account, but it ac-

counted for no part of the Durant interest in the Adirondack investments, as defined by the interlocutory judgment, except 280 shares of the stock of the Adirondack Railway Company, a certificate for $3,000 in second mortgage bonds of said railway company, and a $7,000 interest in the $150,000 Rosekranz mortgage. The account was, in substance, the copy of an account and inventory filed by the defendant as administrator in a proceeding before the surrogate of Warren county, the county in which Dr. Durant resided at the time of his death. The referee then directed the defendant to file a further account, which should include the interest and securities mentioned in the interlocutory judgment. With such direction the defendant "willfully" refused to comply. Nearly two years later an order was obtained adjudging the appellant in contempt, and directing that he be committed to close custody in the county jail until he should comply with the direction of the referee and the interlocutory judgment. From the order so entered the defendant appealed to this court, where the order was affirmed without opinion. Thereafter, on February 10, 1902, the appellant filed a supplementary account, and on May 8, 1902, he filed a supplementary schedule. After the close of the case before the referee, three stipulations were filed with him. These three stipulations and the two supplementary accounts made a large part of the evidence taken before the referee useless, as they practically covered all the property of which an accounting had been directed by the referee and by the interlocutory judgment. The only thing left for the referee to determine was whether or not certain property which Dr. Durant held at the time of his death as agent was his own individual property. Upon that question the referee has found that such property was owned by Dr. Durant, and that the plaintiff's share therein amounted to $462,088.54, which, with interest thereon, amounted at the time of the date of the report to $753,-932.71. Upon motion the referee's report was confirmed at Special Term, and from the judgment entered thereon this appeal is taken.

Practically the only question left for this court to determine is, was there sufficient evidence to warrant the referee in finding that the property held by Dr. Durant purporting to be as agent his individual property? The specific property to which such question relates was further narrowed by admissions and otherwise to the Cheney and Rosekranz mortgages, the so-called first mortgage bonds of $75,000, the certificates for the stock and second mortgage bonds of the Adirondack Railway Company, the money received on the forfeit of the Crane contract, a certain note of the Adirondack Railway Company for $37,140, and the rental of two locomotives and a car paid by the railway company. The referee found that Dr. Durant owned $114,500 of the Rosekranz mortgage at the time of his death, and that the defendant subsequently acquired the remainder thereof, $35,500, with money derived from the "Durant interest," for which the defendant is accountable. The evidence upon this point is documentary in character, and is contained in assignments from Rosekranz to Dr. Durant. By these assignments it is established that Dr. Durant owned of this mortgage $82,500. In 1868, Rosekranz assigned to Dr. Durant and one Bushnell $50,000 of this mortgage. In November, 1871, Bushnell

assigned to Dr. Durant $7,000 of his share in the mortgage, thus bringing Dr. Durant's share up to $114,500, and leaving Bushnell's share $18,000. In December, 1872, Rosekranz assigned to Bushnell a further interest of $8,500, thus bringing Bushnell's share to $26,500. By various assignments, this latter interest of Bushnell was assigned to the defendant, and it is admitted that the defendant acquired this interest with proceeds from the Rosekranz and Cheney mortgages. This accounts for $141,000 of the Rosekranz mortgage. As to the balance of $9,000 the evidence does not fully disclose just how it came into the possession of the defendant, but the whole Rosekranz mortgage was finally satisfied by Janet L. Durant, defendant's wife, although she had previously assigned it to the defendant. The defendant and his wife both testified that she had no money when she was married, and her testimony is that she never paid anything for the various assignments made to her. This evidence, in connection with the stipulation that whatever defendant had paid to get possession of this property came from the Rosekranz and Cheney mortgages, seems to warrant the conclusion reached by the referee upon this subject. The Cheney mortgage was for the same amount as the Rosekranz mortgage, and the referee found that Dr. Durant owned all of this mortgage. The facts in regard thereto are as follows: Cheney's executrix in 1868 contracted to sell this mortgage to Dr. Durant, and the agreement was thereafter recorded in 1884. Thereby public notice was given of Dr. Durant's title thereto. After the death of the executrix, and on April 19, 1896, Cheney and Fowler, administrators with the will annexed of Albert N. Cheney, deceased, made an assignment, after the death of Dr. Durant, to his widow. On the 30th day of April thereafter she assigned it to the wife of the defendant, who assigned it to the defendant on June 25, 1889. No reason is shown why the Cheney administrators should have made this assignment to the widow of Dr. Durant instead of to his administrator, except that there was an instrument bearing date October 6, 1871, purporting to be an assignment of this mortgage by Dr. Durant to his wife, which was received subject to proof of delivery. The defendant relies in establishment of such delivery upon (1) the presumption of ownership by reason of the assignment being in her name, and (2) of the declaration made by Dr. Durant in his lifetime that his wife was the owner of the property and he was acting as her agent. So far as the presumptive proof is concerned, it is the reverse of that claimed by the defendant. The title to this property was in Dr. Durant. The written agreement which he made with the executors of Cheney established that fact, and the agreement of purchase was subsequently consummated by payment on his part. He was not therein described as "agent," but as owner. The case relied upon by the appellant (Lowery v. Erskine, 113 N. Y. 52, 20 N. E. 588) holds that under such circumstances the presumption of ownership is in the party holding the title. Dr. Durant held the title in his lifetime, and the presumption is that he was the owner. The declarations and admissions claimed to have been made by Dr. Durant, often a dangerous species of evidence, were made at the time when the written record disputed such fact. There is not a scintilla of evidence that Mrs. Durant knew that this mortgage was held by her husband

for her, as her agent, or that she knew anything about the execution of the assignment during the lifetime of her husband. The assignment was found after the death of Dr. Durant, signed by him, and that is all that appears. Of proof of delivery or of ownership upon Mrs. Durant's part there is not a syllable. The instrument itself was not recorded until after Dr. Durant's death, and was not acknowledged by him. Abundant reasons may be assigned why Dr. Durant was willing to make an agency appear, quite independent of such relationship existing between his wife and himself, and when it appears that the unacknowledged assignment of Dr. Durant was subsequently recorded, and then assigned by the widow to the wife of the defendant, and by the wife to the defendant, without any consideration moving from anybody therefor, we have little difficulty in concluding that the referee was justified in finding that this mortgage was the property of Dr. Durant at the time of his death, and to charge the defendant with the same, with interest, and award to the plaintiff her one-third share thereof.

The referee has also found that the so-called first mortgage of $75,-000 was executed by the Adirondack Railway Company in January, 1883, "to reimburse for moneys received from T. C. Durant, agent"; that $63,238.78 thereof was issued and assigned to Durant, "agent," in February, 1883; and that this item was the property of Dr. Durant in his lifetime. The same is also true as to the Adirondack Railway Company note of $37,140, which, with interest, amounted to $39,-041.97. It was stipulated that this note was made payable to T. C. Durant, agent; also that the proof of the rolling stock, which was mentioned in stipulation No. 3, was owned by Dr. Durant; and that all of the second mortgage bonds to Durant, "agent," which amounted to $630,908.77, were likewise his property. This entire issue was payable to Thomas C. Durant or bearer, and he was entitled to surrender these bonds and receive therefor new certificates. After his death this was done, and the new certificates were made out in the name of Mrs. Heloise H. Durant by the direction of the defendant. The evidence which was introduced by the defendant to defeat the plaintiff's interest in the last four items is all of the same class, and rests upon the same testimony, i. e., that Dr. Durant dealt with this property and was in fact the agent of his wife. The basis of this claim is built up from the fact that in 1853 Mrs. Durant had a small sum of money from her father's estate, and that Dr. Durant had this money; that from time to time, being a man of considerable wealth, he made gifts of considerable sums and securities to his wife, whereby she became possessed of an independent property, which he subsequently took and invested in promoting and building the Adirondack Railway Company. It is not necessary that we rehearse the details in connection with this matter. This claim, coupled with the use of the word "agent," is the basis upon which it is sought to show that Dr. Durant did not own this property, but held and dealt with it as the agent of his wife. There is no evidence that Mrs. Durant had knowledge of the fact of such agency, or that she was the owner of this property during the lifetime of Dr. Durant, and the fact remains that the whole of the property through assignments and other instru-

ments had become vested, not in Mrs. Durant, the claimed principal,. but in the defendant, and that without the payment of any consideration, save such as had been derived from the property itself. This claim carried to its fullest extent deprived Dr. Durant of any right,. title, and interest in and to any of the property for which the defendant has been called to account. If the item last specified was the property of Mrs. Durant, then it follows that she owns the whole,. and that Dr. Durant had no interest therein. Such were not the dealings. It appears that the certificates of the second mortgage bonds were issued to Dr. Durant on the 20th day of September, 1881, and at the same time and on the same day 250 of the bonds, which entitled the holder to trustee certificates of 40 per cent., amounting to· $44,589.37, were issued to Heloise H. Durant direct, while the others· were issued to Dr. Durant, "agent." All of these bonds came to Dr. Durant on account of his claim against the Adirondack Railway Company, and this individual claim, thus existing by the use of the word· "agent," is claimed to deprive him of his ownership therein. In this· connection evidence was given, and not only given, but it was admitted by formal stipulation, that in many places in the ledger of the Adirondack Railway Company and in the journal entries the abbreviations "Agt." after the name Thomas C. Durant is either written in· at the end of a line or is interlined, and that this was done by a pensioned private secretary and clerk of the defendant, Mr. Banker, after the entries themselves were made, and in these books there is no account in the name of Dr. Durant as an individual. The Crane forfeit,. so called, of $27,000, arose by reason of a failure to fulfill a contract of purchase of some of the Adirondack properties. Such sum of· money was actually paid by Crane, and as it related to a purchase of property which had come to the defendant as trustee the forfeit. inured to the benefit of the trust estate, and the defendant was properly charged therewith. It is needless, in view of the testimony to which· we have already called attention, to go through with each item in· further detail. It is patent upon the face of this record that the interest of Dr. Durant in this railway company was in the main his individual interest, and so far as the word "agent" was used in connection· with the accounts which he kept. and which were entered in the books, it was used as a cover of the property, provoked probably by reason of his involved financial condition; but he represented no person as· principal, except as it plainly appears, and dealt with the property as his own, and when he died held it as such. This property, under these· circumstances, came into the hands of this defendant as the trustee for his mother and sister. He evidently applied to its management business skill and judgment, and he produced, as doubtless Dr. Durant would have done had he lived, from these interests a very large property, which, by adroit manipulation under power of attorney given. by his mother and sister, without cost to himself in money outside of what the property produced, he succeeded in vesting title to the whole· of this very large estate in himself. His mother became dependent, his sister languished in want, and he reveled in luxury. The defendant resisted every attempt to compel an accounting of his stewardship, and the bars of a jail confronted him before he could be induced to

.render an account of his proceeding. The learned referee has with painful and painstaking care gone over this mass of figures and ac-counts, traced the transactions in the minutest detail, and upon evi-dence abundantly satisfying has charged the defendant with the sum for which he must account to the plaintiff. It is sufficient now to say that we are satisfied from the proof that the defendant made use of .the method adopted by Dr. Durant in keeping his books to defraud his sister out of her patrimony, and in this scheme his mother did not escape. We have no hesitancy, therefore, in reaching the conclusion that the referee was correct in the conclusions which he reached, and that the judgment entered thereon is correct.

It should therefore be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON and INGRAHAM, JJ., .concur. LAUGHLIN, J., not voting.