## IRVING TRUST CO. v. McKEEVER.
### Civil No. 1452.

District Court, E. D. New York.
April 29, 1942.

See, also, 2 F.R.D. 1.

Cook, Nathan, Lehman & Greenman, of New York City (Edgar M. Souza, of New York City, of counsel), for plaintiff.

Nathan April, of New York City, for defendant, who after the close of final hearing and before filing of briefs was substituted for Husin & Miller, of New York City (Irvin Husin, of New York City, of counsel), for defendant.

**CAMPBELL, District Judge.**

This is an action for an accounting and for judgment for such amount as may be shown to be due to plaintiff from the defendant with interest and costs.

This action was instituted by Harriet C. Taylor, a resident of the State of California, against Harriet C. McKeever, a resident of the State of New York.

During the pendency of this action the original plaintiff departed this life testate, and the Irving Trust Company, as ancillary executor under the last will and testament of Harriet C. Taylor, deceased, was by order of this Court, substituted as plaintiff herein.

During the year 1929 the said Harriet C. Taylor, plaintiff's decedent, and defendant entered into an agreement whereby defend- ant agreed that if plaintiff's intestate Harriet C. Taylor would intrust to defendant, cash, stocks and bonds, defendant would invest and reinvest such cash and the proceeds of such stocks and bonds for the account of the said Harriet C. Taylor, for the purpose of increasing the income to be derived by said Harriet C. Taylor therefrom and of making capital gains thereon. Defendant further agreed to return to Harriet C. Taylor, plaintiff's decedent, immediately upon demand all such cash, stocks and bonds delivered to her by said Harriet C. Taylor or the proceeds of such stocks and bonds in which defendant might have reinvested such cash or proceeds.

Defendant agreed to render such services without compensation.

The said Harriet C. Taylor delivered to defendant pursuant to said agreement the shares of stock and bonds set forth in a schedule thereof annexed to the complaint in this action and marked "A" having a value in excess of $150,000 and in addition paid to defendant in cash $3,350, on or about May 8, 1930, and $5,200 on or about June 2, 1931. Defendant received and accepted such stocks, bonds and cash under the terms of said agreement and entered upon the performance of her duties thereunder.

Plaintiff's decedent, Harriet C. Taylor, and plaintiff, have duly demanded that defendant account for, and return to plaintiff, all such cash and such stocks and bonds or the proceeds thereof, and any stocks and bonds in which any of such cash or proceeds may have been invested, first in 1933, but, on many requests in writing of the defendant, for more time in which to account, the said Harriet C. Taylor in writing, extended the time of the defendant to account, first to July 1, 1936, and finally to October 1, 1936, but defendant has failed and neglected so to do, except that defendant has made to the said Harriet C. Taylor certain payments, stated by defendant to be repayments of principal or profits, a schedule of which, with the date of each payment, is annexed to the complaint herein, and marked "B" and has from time to time returned to Harriet C. Taylor certain of the bonds, a schedule of the bonds so returned to said Harriet C. Taylor being attached to the complaint herein, and marked "C".

Defendant has also, during the period of six years immediately preceding the commencement of this action, repeatedly

in writing acknowledged her duty to account and to pay any losses that have been suffered, and that her accounts were being prepared, and that there was something to be accounted for, and also requesting an extension of time to account.

The defendant failed to account by October 1, 1936, the last day to which the said Harriet C. Taylor extended her time to account, and in fact, has never accounted.

Defendant contends

1. That this action is not one in equity, and that the defendant was entitled to a Jury trial.

2. That the agreement by the defendant to guarantee against any losses was unreasonable.

3. That the six years statute of limitations, and not the ten years statute, applies, and that the statute had run before the commencement of this action, and that by reason thereof there can be no recovery by the plaintiff in this case.

Prior to January 30, 1931, the agreement between Harriet C. Taylor and the defendant Harriet C. McKeever was oral and the transactions limited in amount. They were very close friends, Mrs. Taylor being addressed by the defendant in many communications, by the name "Hytie", and the defendant being addressed by Mrs. Taylor in communications as "Susanne".

The following letter was sent to the defendant by Harriet C. Taylor (Ex. 70):

"30 Fifth Avenue,
"New York City,
"Jany 30, 1931.
"Dear Susanne.
"Owing to ill health, and a probable absence from home for several months, I am going to ask you if you will be kind enough to continue taking charge of my affairs for sometime to come.

"My securities are placed in your hands, and I hereby authorize you to both *buy* and *sell* such bonds and stocks as seem advisable to you, for my best interest. I know you will be willing to do this for me, and I rely fully on your judgment. Keep me informed from time to time just what sales or purchases you make—Will write again soon—always deeply grateful. With love.
. "Harriet C. Taylor."

On January 25, 1934, the following writing acknowledged by the defendant before a Notary Public (Ex. 19) the agreement was stated more in detail:

"I, Harriett C. McKeever, am empowered by Harriet Chittenden Taylor to act as her agent for buying and selling stocks and bonds for her. I have received from her certain bonds and stocks as per list. This list we both hold and have signed.

"I am empowered to buy or sell or reinvest and to use my best judgment and ability to improve and better her investments and income. The bonds and stocks which I am now holding are entirely her property and any money made by investing same will also belong entirely to her. This agreement is witnessed and signed by us both."

The guarantee is not inferred, but is stated in plain language by the defendant in letters and receipts signed by her, and in some cases written in its entirety by her.

The first is an undated receipt, but obviously given in 1931 before November 10, 1931 (Ex. 1), which reads as follows:

"These bonds are to be used as collateral for stock bought for Harriet C. Taylor; and I am to use my discretion in so buying.

"However, I will guarantee her no loss on bonds, and will try to the best of my ability to make as large a profit as possible.
"Harriette C. McKeever"

The second is a letter from the defendant to said Harriet C. Taylor, dated November 10, 1931 (Ex. 12), which in part says as follows: " * * * Now dear I want to make from twenty to fifty thousand for you. I have guaranteed you *no loss.* I have all buying slips, *all figures,* every penny shall be accounted for. By selling and changing the investments, I have already made about fifteen thousand for you. * * *" (Emphasis in original)

The following letters from the defendant either to the said Harriet C. Taylor, or her son Spencer, are corroborative of the said agreement of the defendant to guarantee the said Harriet C. Taylor, Exhibits Nos. 27, 44, 46, 48, 52, 53, 57, 58, but space prevents quoting from them.

The last of those letters (Ex. 58) is very important, as it contains the first suggestion of bankruptcy if defendant is not given time. It contains the following statement: "I have never so much as touched a penny of *your money,* it has all been on collateral. As soon as I can get the money

I shall substitute my own money for yours and return yours."

That the defendant did guarantee the said Harriet C. Taylor against loss is shown by defendant's affidavit sworn to by the defendant on August 6th, 1941 (Ex. A) in which defendant, after stating that Mr. Howard had told her that he was informed by Mrs. Taylor that Mrs. Taylor had been guaranteed against losses, said "and deponent in turn advised him that even though she felt there was such a guarantee, your deponent had more than fulfilled that guarantee by paying moneys which were not owed."

Many of the letters from the defendant were not dated, but there were received in evidence envelopes on which the postmarked dates appeared, and from the letters from said Harriet C. Taylor to the defendant, and the other evidence in the case, such letters were undoubtedly written at the dates shown on such envelopes and were connected up. In any event, there is no denial that they were all signed by the defendant, and in some instances the whole body of the letters were in her handwriting, and they all relate to the transactions between said Harriet C. Taylor and the defendant, which form the basis for this action.

█ The contention, urged on behalf of defendant, that the agreement by her to save Harriet C. Taylor from any loss is so unreasonable that it is not to be accepted, finds no response in the evidence in the face of all of defendant's writings, and we must not lose sight of the fact that references to the agreement to save said Harriet C. Taylor from any loss were, as to the later letters, made to induce her to forbear and refrain from asserting her legal rights, while the original agreement and some of the earlier were made to induce the said Harriet C. Taylor to allow the use of her stocks and bonds as collateral and to intrust more of her property to the defendant, or continue, even though she may not have been entirely satisfied with the manner in which her securities were being handled.

It seems entirely unnecessary to enter into any discussion as to the interpretation and construction of the meaning of the word "guarantee" as its meaning as used by defendant, is clearly expressed in the numerous letters of the defendant in which by many forms of words defendant expressed her understanding of the meaning of the word "guarantee", as used by her in such letters.

█ Defendant never really showed by her actions that she had made any real effort to account. This is clearly shown by her dealings with Mr. Howard, who for a time represented said Harriet C. Taylor in an effort to get an accounting. On all the evidence, the contention of the defendant, as to her dealings with the accountant, with reference to preparing her account, to said Harriet C. Taylor, is unreasonable, and I cannot accept it as true (Exs. 57, 58 and 60), as she must have been in error. Her statement that she gave a copy of a statement to Mr. Howard in the latter part of 1936 is erroneous, as her letters show that as late as February, 1937, a statement had not been prepared. Further, when Mr. Lee, an attorney for Harriet C. Taylor, after Mr. Howard, presented to defendant demands for an accounting, no mention was made by defendant to Mr. Lee that she had ever given any statement to Mr. Howard.

On all the evidence, I am convinced that the defendant never loaned said Harriet C. Taylor any money.

On behalf of the defendant the argument is renewed that this action is not one in equity, and that the defendant was entitled to a Jury trial.

That question was fully argued before me on a Motion made before trial to remove this case from the Civil Jury Calendar and place it upon the Civil Non Jury Calendar, which I granted.

█ This is not a case where a plaintiff had given stocks or bonds to defendant which were to be returned, nor a case where plaintiff's decedent had given money to defendant to purchase certain stocks or bonds and deliver them to plaintiff's decedent, but was a case where plaintiff's decedent had given stocks, bonds and money to defendant, who over a period of years, bought and sold stocks and bonds, and changed the investments as she thought fit. Only by an accounting can plaintiff ascertain what, if anything, is coming to it, and with the complexity of this action and the many items that will be involved, it is peculiarly a case that should be tried by the Court, and not by a Jury.

■ The defendant was a fiduciary.

Not only was the defendant a fiduciary, who would ordinarily be compelled to account, but she recognized her obligation to account, and repeatedly in her letters to said Harriet C. Taylor, promised and agreed to account, and in consideration of that promise she received more property and extensions of time to account.

Certainly the plaintiff would have had no remedy by replevin, because plaintiff does not, and can not, know if there be any property left to replevin, nor could plaintiff proceed for conversion, as defendant may have disposed of some, or all, of the property in accordance with the agreement, and not converted any of the proceeds to her own use, but be liable only on her contract to guarantee no loss, and it is difficult to conceive how defendant's liability could be established, without an accounting.

The defendant was running brokerage accounts for herself, for her husband, and for Mrs. Taylor. Were they all separate, or were they commingled? Only an accounting will show.

The plaintiff is entitled to an accounting, and to a recovery of the amount found due. Frethey v. Durant, 24 App.Div. 58, 48 N.Y.S. 839; Rose v. Durant, 86 App. Div. 623, 83 N.Y.S. 503; Jordan v. Underhill, 91 App.Div. 124, 86 N.Y.S. 620; Madison Trust Co. v. Carnegie Trust Co., 215 N.Y. 475, 109 N.E. 580; Potomac Insurance Co. of District of Columbia v. Kelly, 173 App.Div. 791, 160 N.Y.S. 161; Insurance Co. of North America v. Whitlock, 216 App.Div. 78, 214 N.Y.S. 697.

This brings us to a consideration of the defense of the Statute of Limitations.

■ There is a question as to which Statute applies in this case; the ten years Statute, New York Civil Practice Act, Section 53; or the six years Statute, New York Civil Practice Act, Section 48; but, for the reasons hereinafter shown, I think it immaterial, as the Statute did not commence to run earlier than July 2, 1935, even if it was not at a later date, and this action was commenced on August 16, 1940.

The Statute could not have commenced to run until there had been a breach by defendant failing to account when an accounting was demanded, and when that first occurred does not seem to be of moment, as in numerous letters, written by the defendant to said Harriet C. Taylor until about one year before this action was commenced is shown an intention and obligation to account. As examples, see Ex. 25, dated July 2, 1935, which contains a long list of securities headed "List of securities held in trust by Mrs. McKeever property Mrs. J. Spencer Taylor". Exhibits 65 and 67—letters which refer to Suell's estate, which must have been written subsequent to his death, which occurred in 1938. See also Exhibits 57, 66 and 73, and Exhibits 46 and 47, which refer to Mr. Howard.

There were also shown payments on account, claimed by the defendant to have been made within the six years period, particularly the payment made in 1939 of $5,000 on account of principal, and included in letter (Ex. 57).

Defendant, for a long time, was soliciting more time in which to prepare her account, and in pursuance of her requests, said Harriet C. Taylor, by Ex. 39 (letter of May 25, 1936), extended the time of the defendant to account and turn over to Harriet C. Taylor, to July 1, 1936, and by Ex. 55 (letter of September 14, 1936) further extended the time to October 1, 1936 ; both written within six years prior to the commencement of this action, and thereby, prevented the running of the Statute until October 1, 1936.

The defense of the Statute of Limitations has not been sustained.

Plaintiff should have judgment for an accounting, as prayed for in the complaint herein, and for any money shown to be due plaintiff from defendant, with interest and costs.