## MAURO v. RODRIGUEZ et al.

### No. 3721.

Circuit Court of Appeals, First Circuit.

May 5, 1943.

Benicio F. Sanchez Castano, L. E. Dubon, Dubon & Ochoteco, and Otero Suro & Otero Suro, all of San Juan, Puerto Rico, for appellant.

E. T. Fiddler, of San Juan, Puerto Rico, for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This case is here on appeal from a judgment of the District Court for Puerto Rico in which it was ordered that the heirs of Rosa Torrado, Vda. de Frese, recover from Felix Mauro Ginorio: (1) the principal sum of $39,400 plus interest at the rate of 8% per annum from and after June 21, 1929, until said sum shall have been paid in full; (2) that appellees recover the sum of $1,218 from Ginorio; (3) that if appellant surrenders to appellees four bearer mortgage notes which are secured by mortgages upon the property of Rosa Torrado, then that part of the judgment which orders the defendant to pay appellees the sum of $39,400 plus interest will be satisfied; (4) that the appellees are entitled to a lien on all the properties which Ginorio may have received whether directly or indirectly from Mora & Frese, Sucrs. S. en C., and/or from Pedro Mora Acosta; and finally, that appellees recover from the appellant all costs, expenses and disbursements incurred in this action.

Testimony was heard by the district court and reference of this cause was made to a special master who also took testimony and had the benefit of the services of an accountant to aid him in preparing his final report. The evidence in this case is highly conflicting. Much of it is incomplete because of the inadequacy of the records kept by the various parties concerned, but we are satisfied that the district judge on the basis of all the testimony before him, including the report rendered by the special master, was justified in reaching his ultimate conclusion.

The bill of complaint is voluminous and we need only say that it charges the appellant with fraudulently appropriating to himself certain properties of the firm of Mora & Frese, and Pedro Mora Acosta and also certain mortgage bearer notes belonging to Rosa Torrado and that included in the prayer for relief is that the court order an accounting. The district court found no fraud, but it did conclude that throughout all the transactions which resulted in the transfer of the assets of Mora & Frese to Ginorio there existed a fiduciary relationship between Ginorio and the partnership Mora & Frese and the decedent Rosa Torrado. It treated the complaint as seeking an accounting from Ginorio of his stewardship of the affairs of the partnership and of Rosa Torrado. We state in some detail the facts as culled from the findings of the district court. These are fully substantiated by testimony before the trial court and the master, which we have carefully considered.

■ On January 13, 1927, Pedro Mora Acosta and Rosa Torrado entered into a partnership under the name of Mora & Frese, Sucesores, S. en C. This partnership continued the existence of a previous partnership of substantially the same name between Mora and the deceased husband of Rosa Torrado. Mora was the sole managing partner and Rosa Torrado was a limited or silent partner. Under Puerto Rican law Rosa Torrado was not personally liable for the debts of the partnership except to the extent of her invested capital. The firm of Mora & Frese in 1928 was in serious financial difficulties. At this time the firm owed Ginorio the sum of $50,000. $35,000 of this sum was loaned by Ginorio to the predecessor partnership, for which notes were given, one for $10,000 and one for $25,000. The $10,000 note was guaranteed by Rosa Torrado and the $25,000 note was secured by a pledge of 334 shares of Arecibo Lumber Company, which shares were held by the partnership. At about the same time the partnership

was indebted to the American Colonial Bank of Puerto Rico in the sum of $48,750, which amount was represented by notes guaranteed by Rosa Torrado. Debts due to other creditors aggregated the sum of $37,000. At this time Rosa Torrado personally owned unencumbered real estate valued at between $65,000 to $85,000, and Mora, the managing partner owned real estate, not included in the assets of the firm, valued at more than $10,500. The evidence shows that Rosa Torrado was a woman of little education and with no business experience. She relied to a considerable extent upon her nephew Ramon Garcia Torrado, who acted under a power of attorney. She was about seventy years of age and in a poor state of health. Mora who was the managing partner of the firm was induced to surrender his management upon the representation of Ginorio that he would avoid bankruptcy proceedings against the firm and that it was his purpose to save the personal property of Mrs. Torrado. Ginorio satisfied all the firm's debts with the exception of those owed to the American Colonial Bank of Puerto Rico and the Shell Company. The evidence shows that he was able to liquidate some $37,000 in obligations of the company for an amount between $12,000 and $15,000.

On June 21, 1929, at the instance of Ginorio, Mrs. Torrado executed mortgages on all of her real properties to secure certain bearer notes which had an aggregate face value of $94,900. These notes were seven in number and were in excess of the value of the mortgaged properties. The American Colonial Bank upon learning of this transaction insisted that the loans made by it be secured and as a result of its demands on June 26, 1929, the American Colonial Bank, through its representative, selected three of these notes with an aggregate face value of $55,000. The remaining notes for the face value of $39,400 subsequently came into the possession of Ginorio and are at the present time in his possession or have been transferred by him to others. On or about August 17, 1929, Ginorio caused a new partnership to be created and Mrs. Torrado was made to appear as the managing partner and as contributing $1000 to its capital. This amount, which constituted one-fifth of the invested capital, was never actually paid in by Mrs. Torrado. The name of the new partnership was Viuda de Frese, S. en C. Jose Rivera Aulet, a brother-in-law of Ginorio and one of the defendants in the present suit, appeared as a silent partner and as contributing $4,000 to the capital. Upon the creation of the new partnership, Mrs. Torrado executed a power of attorney and gave Rivera Aulet full authority to represent her. The evidence makes it clear that Rivera Aulet was merely a dummy and that the actual person in control of the new partnership was Ginorio, who directed the management of the firm either directly or indirectly. The new firm continued to do business for only a short period of time and was dissolved on or about April 14, 1930, by a formal deed which purported to sell all of the assets to Ginorio. The deed of dissolution imposed liability for the debts of the firm upon Mrs. Torrado. The district court found as a fact that the new firm was not a bona fide partnership but was constituted for the sole purpose of taking over all of the properties and assets of the firm of Mora & Frese. In the findings of fact, the district court made the following valuation of the assets taken over by Ginorio:

Accounts receivable having a book value of approximately $100,000, but valued as of the date taken over from Mora & Frese at ..................... $18,000.00
  Cash ..................-....... 1,400.00
  Merchandise, furniture and fixtures .................. 6,000.00
  One truck (sold)............ 300.00
  Shares of Arecibo Dock & Shipping Co. with a par value of $5,000 ........... 2,500.00
  Real Estate .............. 18,000.00
  Real Estate of Pedro Mora Acosta on account of his personal liability to the firm 10,500.00

Total ............... $56,700.00

We may say in passing that the ultimate valuation determined by the district judge differs from that found by the special master. The special master was of the opinion that the accounts receivable were worth $51,785.36 or about 50% of their book value. In these matters, we accept the determination of the district judge, as we must, since no exceptions were taken by the appellees to the findings of fact. It may be said, however, that the district court showed liberality to the appellant in reaching its conclusions as to the value of the assets transferred to

Ginorio, and that on this record we would have been forced to accept even larger determinations of value if so found by the district judge.

Ginorio, through his agent Rivera Aulet acquired real estate belonging to Mora which was valued at more than $10,500. The testimony shows that some of this was returned but no credit was allowed to Ginorio because of the fact that Mora as managing partner was liable for firm debts and was not entitled to the return of any of his property. There was testimony showing that Ginorio made certain personal loans to Mrs. Torrado and the district court found as a fact that on April 20, 1935, Ginorio loaned to Mrs. Torrado the sum of $6,000 represented by three promissory notes of $2000 each, bearing interest at the rate of 12% per annum, and that on May 9, 1928, Ginorio loaned to Mrs. Torrado the sum of $5000. The district judge found as a fact that both of these sums were paid to Ginorio, and determined that Ginorio received cash and other assets in the sum of $1218 in excess of the amount legally due him. On the basis of these findings of fact, the district court rendered its judgment.

In the assignments of error the appellant asserts that the court erred: (1) in allowing the appellees as heirs of Rosa Torrado the benefit of an accounting of funds and property not belonging to her and for which the appellant was not accountable to them; (2) in granting appellees relief for a conversion or appropriation of funds and properties notwithstanding its finding that appellant was only liable to account as an agent and that since there was no previous demand and refusal an action for conversion was improper; (3) in not finding that the action of the plaintiffs was barred by the statute of limitations; (4) in finding that the appellant appropriated to his own use and without consideration the four mortgage promissory notes which were executed by Mrs. Torrado and which were handed over to appellant; (5) in finding that Mrs. Torrado did not owe the appellant the indebtedness of $13,500 acknowledged by her in a deed executed September 20, 1929; (6) in finding that the firm of Viuda de Frese, S. en C. was an instrumentality of the appellant and not a bona fide organization, and (7) in its finding concerning the different items of debits and credits in stating the account between Mora & Frese, Sucrs. S. en C. and this appellant.

The appellant's first assignment of error raises the question whether these appellees are entitled to an accounting. It may be said that it is clear from the record that counsel for the appellant voiced no opposition to the appointment of a master for the purpose of making an accounting and it would seem that it is now too late to raise its present objection. Moreover, we are of the opinion that the district judge was justified in ordering an accounting. While the district court found no actual fraud it did conclude, as we have already stated, that a fiduciary relationship existed between the appellant and Mrs. Torrado. At the time of Mora's retirement from the partnership of Mora & Frese, Sucrs. S. en C., Mora had no equity in the partnership and Mrs. Torrado had made herself liable for its debts. While it appears that there was no formal dissolution of that partnership, nevertheless, any equity in it belonged to Mrs. Torrado. The new partnership formed by Rivera Aulet and Mrs. Torrado took over all the assets of the old firm and it is clear that under the circumstances of this case the only possible way that the heirs of Mrs. Torrado could determine what was due them was by an accounting. As was said in Rivoli Drug Co. v. Lynch, 9 Cir., 1931, 50 F.2d 536, 537: "An examination of the bill shows that it contains all of the allegations essential in a cause for an accounting. The allegations show questionable transfers of property without consideration, confused and complicated accounts, and the absence of books of account of alleged bankrupt; the existence of a trust or fiduciary relation * * *. No precise rule can be laid down as to the cases in which a court of equity will exercise its jurisdiction. The court reserves itself a large discretion upon the subject, and will take or refuse jurisdiction according to the circumstances of the case." See Irving Trust Co. v. McKeever, D.C., 44 F.Supp. 842.

As to the contention that Mrs. Torrado was indebted personally to Ginorio in a sum of $13,500, and that she executed a formal deed in his favor, the evidence sustains the findings of the district court that these sums were repaid to Ginorio and therefore there was no reason for allowing him a deduction in this amount.

Since we have determined that the appellees are entitled to an accounting, the only issue of importance is whether Gin-

orio owes anything to the heirs of Mrs. Torrado. There certainly was ample evidence in this record to support the ultimate conclusions of the district judge. We do not believe appellant's other assignments of error merit consideration.

Judgment of the District Court affirmed with costs to the appellees.