(173 App. Div. 791)

POTOMAC INS. CO. OF DISTRICT OF COLUMBIA v. KELLY.

(Supreme Court, Appellate Division, First Department.   July 10, 1916.)

1. INSURANCE ⬤══82—ACCOUNTING BY AGENT—FOUNDATION OF RIGHT OF ACTION—FIDUCIARY RELATION.

A fiduciary relation existed between a fire insurance company and the party who contracted with it to act as its general agent for the United States and Canada, to establish an agency, maintain a field and office force, give his personal attention to the management, and render the insurance company monthly statements or accounts, and an action lay against him by the company for an accounting.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 107, 108; Dec Dig. ⬤══82.]

2. INSURANCE ⬤══82—ACCOUNTING BY AGENT—EQUITABLE ACTION—BURDEN OF PROOF.

In an action by a fire insurance company against its general agent for an accounting, the burden was on the agent to show he had turned over to plaintiff all the moneys collected by him and to which it was entitled.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 107, 108; Dec. Dig. ⬤══82.]

3. INSURANCE ⬤══82—ACCOUNTING BY AGENT—RIGHT OF ACTION—RENDITION OF STATEMENTS.

The fact that the general agent of a fire insurance company rendered statements from time to time, which were retained without objection, did not deprive the company of its right to have a full and complete account of the agent's dealings, if it so desired.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 107, 108; Dec. Dig. ⬤══82.]

4. INSURANCE ⬤══82—ACCOUNTING BY AGENT—RIGHT OF ACTION—SHOWING OF MONEY DUE.

To have an accounting against its general agent, it was not necessary for plaintiff fire insurance company to show that anything would be found due it from the agent; it being sufficient that a fiduciary relation existed between the parties, entitling the company to a full statement of the agent's acts as such.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 107, 108; Dec. Dig. ⬤══82.]

5. CONTRACTS ⬤══26—CHARACTER OF CORRESPONDENCE AS SUCH.

A letter from the general manager of an accident, fire, and life insurance company to an insurance man, stating: "We are agreeable to appoint you as our manager for [an insurance] business in the United States on the terms arranged [stating them]. Formal agreement to this effect will be submitted by us to you, with the usual clauses and conditions, * * * and shall send you draft of the necessary agreement in the course of a day or two"—upon which letter defendant indorsed, "The foregoing is accepted this day," did not constitute a contract, being at most a statement of what the contract, when presented, would contain.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 119, 120; Dec. Dig. ⬤══26.]

Cross-Appeals from Special Term, New York County.

Action by the Potomac Insurance Company of the District of Columbia against John A. Kelly.  From an interlocutory judgment (91 Misc. Rep. 335, 155 N. Y. Supp. 98), directing defendant to account,

both parties appeal. Judgment modified, as indicated in the opinion, and, as modified, affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

Stephen P. Anderton, of New York City, for plaintiff.

Edgar J. Nathan, of New York City, for defendant.

McLAUGHLIN, J. Appeal by both parties from an interlocutory judgment directing the defendant to account. Plaintiff is a fire insurance company, with offices in Washington, D. C. Defendant is a resident of New York City. On the 12th of January, 1909, he was appointed by the plaintiff its agent for the United States and Canada, excepting the District of Columbia and its immediate vicinity, for a term of five years, under a written contract which fixed his compensation at $37\frac{1}{2}$ per cent. of the net premiums received on policies written through his office. Defendant agreed, for the compensation stated, to establish an agency, to maintain an efficient and capable field and office force, to give his personal attention to the management, and to render to the plaintiff monthly statements or accounts. Immediately following the execution of the contract the plaintiff entered upon the discharge of his duties, and continued to act as plaintiff's agent until February 17, 1913. He issued and canceled policies on behalf of the plaintiff, collected premiums, adjusted and paid losses, and from time to time rendered statements to the plaintiff of the policies written and the amount of moneys collected and disbursed.

[1-4] The evidence clearly established that, acting under this contract, his relation to the plaintiff was a fiduciary one, and the action lies for an accounting. The burden is upon him to show that he has turned over to the plaintiff all of the moneys collected by him and to which it is entitled. Marvin v. Brooks, 94 N. Y. 71. The fact that he rendered statements from time to time, which were retained without objection, does not deprive the plaintiff of its right to have a full and complete account of defendant's dealings, if it so desires. Jordan v. Underhill, 91 App. Div. 124, 86 N. Y. Supp. 620; Frethey v. Durant, 24 App. Div. 58, 48 N. Y. Supp. 839. To obtain an accounting, it is not necessary for the plaintiff to show that anything will be found due. It is sufficient that the relation exists between the parties, and this entitles the plaintiff to a full and complete statement of his acts as agent. But, from the theory upon which the case was tried and decided, as well as the manner in which it was presented by the plaintiff on appeal, it would seem that the plaintiff does not want an accounting under the contract referred to, but does desire one from May 1, 1911, when it is claimed another contract was entered into. The interlocutory judgment does not direct the defendant to account from January 12, 1909, but only from May 1, 1911, when the alleged second contract was made.

[5] About the time the contract was made, January 12, 1909, the defendant purchased a majority of plaintiff's capital stock. Some time in 1909 he became acquainted with one Norie-Miller, the general manager of the Central Accident, Fire & Life Assurance Company of

Perth, Scotland, whom he finally interested in the plaintiff's company. Defendant went to Perth in April, 1911, and saw Norie-Miller, with whom he arranged for the sale of his stock in plaintiff to the General Accident Company. The sale of the stock also contemplated that the Accident Company should acquire the balance of the stock in plaintiff, either through the defendant or others. On May 1, 1911, Norie-Miller wrote a letter to the defendant, referring to the purchase of his stock, and saying:

"We are agreeable to appoint you as our manager for that business in the United States on the terms arranged, namely, you to be paid a straight commission of 35 per cent. on the net premiums received, this to cover every commission and expense, including taxes and any other special charge, and you to receive also a contingent commission of 10 per cent. on the net ascertained profits, such profits to be arrived at after deduction of necessary reserves. * * * Formal agreement to this effect will be submitted by us to you with the usual clauses and conditions, * * * and shall send you draft of the necessary agreement in the course of a day or two."

Upon receipt of this letter the defendant indorsed upon it:

"Perth, 1st May, 1911.
"The foregoing is accepted this day.                    Jno. A. Kelly."

No formal contract was ever presented, but the court, on the theory that the letter itself constituted a contract, has directed an accounting from its date. It did not constitute a contract. It was, at most, the statement of what the contract, when presented, would contain. It was not executed by the plaintiff, and there is nothing to indicate that it was intended to be a binding contract between the parties. The defendant continued as agent until May 23, 1913, and transacted business for the plaintiff in substantially the same way that he had prior to the time the letter was written. The contract of January 12, 1909, had not been terminated, and therefore, if the plaintiff is entitled to an accounting at all, it is under that contract, and not under the letter referred to.

It follows that upon the defendant's appeal the judgment should be modified, so as to direct an accounting, if the plaintiff so desires, of the defendant's acts as agent under the contract of January 12, 1909.

The plaintiff's appeal is from so much of the judgment as holds that the defendant was entitled to a contingent commission of 10 per cent. on the net ascertained profits of the plaintiff's business. In the letter to which reference has been made there is a statement to that effect, but, as has already been indicated, this letter never ripened into a contract, and for that reason the interlocutory judgment is erroneous, in that it directs such an accounting. Defendant is not entitled to a contingent commission of 10 per cent. on the net ascertained profits. The contract under which the services were rendered contains no such provision, and the interlocutory judgment should also be modified in this respect.

The judgment appealed from is modified, as indicated in this opinion, and, as thus modified, affirmed, without costs to either party. The order to be entered herein, which will be settled on notice, should contain the necessary modification of the findings. All concur.