INSURANCE COMPANY OF NORTH AMERICA, Appellant, *v.* DANIEL G. WHITLOCK and Others, Copartners Doing Business under the Firm Name and Style of JONES & WHITLOCK, Respondents. (Action No. 2.)

First Department, March 19, 1926.

**Insurance — action for accounting by general agents of foreign insurance company — evidence shows deliberate overcharges and concealment thereof by general agents — interlocutory judgment for accounting should have been rendered — plaintiff was entitled to accounting on demand — relations of plaintiff and defendants were fiduciary — general release not binding since defendants willfully concealed fraud — plaintiff not chargeable with contributory negligence in not discovering fraud.**

In an action by a foreign insurance company to compel its general agents in this State to account, an interlocutory judgment in favor of the plaintiff should have been rendered, since it appears that the defendants appropriated five per cent of recoveries in actions brought on behalf of the plaintiff and willfully stated to the plaintiff that said five per cent was included in attorney's fees; that the defendants secretly and fraudulently retained ten per cent of sums claimed to have been collected through a freight claim agency in cases where, in fact, the freight claim agency performed no duties; that the defendants wrongfully retained ten per cent of salvage recoveries in cases where the defendants performed no work in reference thereto, but the recoveries were made by the assured; and that the evidence shows a willful and deliberate concealment of the fraudulent means by which these sums were retained by the defendants.

Furthermore, in view of the fact that the relationship between the plaintiff and the defendants was fiduciary, the plaintiff was entitled to an accounting upon demand, as a matter of course.

A general release executed by the plaintiff to the defendants is not binding on the plaintiff, since it clearly appears that the relationship between the parties was fiduciary and that the defendants failed to disclose all material facts in relation to the transactions when a settlement was made.

The fact that the plaintiff may have had in its possession for many months prior to the giving of the release, data from which it could have ascertained the facts does not prevent the plaintiff from demanding an accounting on the ground that the defendants fraudulently retained moneys, for contributory negligence is not a defense to an action for willful fraud and deceit; a person who is negligent in reposing confidence in a wrongdoer is not thereby prevented from recovering his property from the latter.

APPEAL by the plaintiff, Insurance Company of North America, from a judgment of the Supreme Court in favor of the defendants,

Insurance Co. of North America *v.* Whitlock.   No. 2.   **79**

App. Div. 78]                    First Department, March, 1926.

entered in the office of the clerk of the county of New York on the 24th day of July, 1924, upon the decision of the court rendered after a trial at the New York Special Term.   (*See Insurance Co. of North America* v. *Whitlock, No. 2,* 207 App. Div. 319.)

*John B. Doyle* [*Harrison Clark* with him on the brief], for the appellant.

*Feltenstein & Rosenstein* [*Sol. Boneparth* of counsel; *Moses Feltenstein* with him on the brief], for the respondents.

Finch, J.   The complaint alleges that the defendants were employed as general agents by the plaintiff, a foreign insurance company, to direct its business in this State, and that in the course of such employment the defendants misappropriated moneys of the plaintiff, which fact the plaintiff did not discover until after the termination of the agency.   The relief demanded is an accounting.

The answer, in addition to denials, sets up as a separate defense the plea of a general release from the plaintiff.   In reply the plaintiff alleges that the release was given without knowledge of the fraud of the defendants, and that the acts constituting the fraud were concealed by the defendants, who occupied a fiduciary relation to the plaintiff.

Plaintiff's business is that of insuring merchandise during transportation.   The defendants were employed to write insurance, receive premiums, adjust losses, salvage goods lost, and, generally, to transact the business of the plaintiff in this State.   Defendants' compensation was five per cent of the gross commissions, plus a commission of fifteen per cent of the net profits of the agency. The defendants made monthly reports in connection with the business transacted.   Plaintiff claimed that these statements were false in certain particulars.   Whereas on this record the evidence is such as to create issues of fact on many of the items, yet, in one instance certainly, and in two instances probably, there is no doubt but that the defendants were guilty of willful and deliberate fraud, which at all times was concealed from the plaintiff.

*First,* the plaintiff claimed that the defendants wrongfully appropriated five per cent of recoveries made through legal proceedings by Levy & Becker, a firm of New York attorneys, for whose services the defendants charged the plaintiff a contingent fee of twenty-seven and one-half per cent of recoveries, but secretly retained from such fees five per cent of recoveries, the attorneys receiving the remaining twenty-two and one-half per cent.   According to the plaintiff's testimony, by mutual agreement the defendants undertook to retain, on behalf of the plaintiff, attorneys in New York city to prosecute such claims as required legal action for their

collection, upon a contingent fee basis of twenty-seven and one-half per cent of the amounts recovered, to be paid to said attorneys. The defendants denied that this was the agreement, but claimed the agreement was that the defendants should establish a legal department for the purpose of obtaining recoveries through legal proceedings, and that, as compensation for such services, the defendants were to receive twenty-seven and one-half per cent of any amounts recovered. Whatever doubt might otherwise exist as to the weight of the evidence upon this issue of fact clearly is resolved in favor of the plaintiff's version by the following facts concerning which there is no dispute: The defendants engaged as attorneys Messrs. Levy & Becker. Said attorneys brought an action against the Director-General of Railroads on behalf of the Botany Worsted Mills, to which the defendants had paid a loss on behalf of the plaintiff of $14,796.67. A net recovery of $12,966.10 was returned to the plaintiff, and the plaintiff requested a statement from the defendants of the charges against the recovery. In response the defendants forwarded an alleged self-explanatory copy of a letter from Levy & Becker. The original of this letter contained the reasons for the settlement of the claim and rendered an account of the proceeds, concluding with a statement of the deductions for petty disbursements and the following: " Our fees at the rate of $22\frac{1}{2}\%$ amounting to $2,913.14, remitting to you net the sum of $10,034.16."

The defendants forwarded to the plaintiff what purported to be a true copy of the aforesaid letter, and which was a true copy in all respects, except that the two last lines were changed so as to read: " Our fees at the rate of $27\frac{1}{2}\%$ amounting to $3,560.51, remitting to you net the sum of $9,386.79."

This letter cannot be regarded as anything less than a deliberate and intentional falsification for the purpose of concealing from the plaintiff the fact that defendants were receiving and retaining five per cent of the amounts recovered over and above the cost of collecting the same. The explanation which defendants gave for this falsification of the letter of Levy & Becker was the testimony of the employee who made the alteration and who for many years had been in full charge of insurance losses and recoveries for the defendants, as follows: " Now, rather than have an endless chain of correspondence and obviating any further correspondence, I simply quoted the $27\frac{1}{2}\%$ rather than the $22\frac{1}{2}\%$. If I had quoted $22\frac{1}{2}$, the figures would not have jibed and there would have been considerable more correspondence."

In other words, the alleged explanation was no explanation at all.

The question also immediately presents itself, why, if the agreement between the parties was as the defendants claim, namely, that they were to receive an allowance of twenty-seven and one-half per cent for the collections and make such arrangements as they saw fit to effect the collections, was there any need of explanation. Since it is apparent that there would have been no need for explanations if the plaintiff had no interest in what the defendants paid to counsel hired by them, the conclusion follows that the version of the plaintiff is the true version of the agreement, and that the defendants were wrongfully appropriating five per cent of recoveries by legal proceedings and deliberately concealing such fact from the plaintiff.

While the amount gained through this scheme in this particular instance was but $647.37, yet it might amount to very much more when taken into consideration with the vast amount of business that was done under similar circumstances. This deliberate scheme to obtain additional moneys by false representations lends color to the inferences which may be drawn from other portions of the evidence where other schemes were employed to obtain moneys in other departments.

*Secondly,* the appellant charges that the defendants secretly and fraudulently retained ten per cent of sums claimed to have been collected through the freight claim agency, but which in fact were returned to the defendants by the assured when no actual losses had been sustained by the assured, the defendants having willfully or through their own negligence or oversight paid the claims to the assured and charged a commission on the amounts returned. In support of this charge the appellant has shown the following facts: On or about October 25, 1918, the defendants received on behalf of a firm known as Pelgram & Myer a claim of $3,667.78 on account of a loss of certain silk goods in transit. On January 8, 1919, the defendants were notified that goods of the value of $3,261.44 had been recovered by the police of Paterson, N. J. Notwithstanding this advice, the defendants on January 15, 1919, notified plaintiff of the loss of goods amounting to $3,667.78 without advising plaintiff of the fact that most of such goods had been recovered. On February 27, 1919, the defendants paid the claim in full to Pelgram & Myer, receiving shortly thereafter from said Pelgram & Myer a repayment of $3,261.44 to cover the overpayment made by the defendants. Upon receiving this repayment the defendants credited the freight claim agency with ten per cent of the amount. In attempted justification of this collection charge, the defendants offered testimony to the effect that a detective of the freight claim agency had assisted the Paterson police in

recovering the goods. There was no corroboration whatsoever of this testimony, however, and the witness so testifying was the same employee who had falsified the copy of the Levy & Becker letter. When it is considered that this witness did not hesitate to alter the copy of the letter sent to the plaintiff when it was deemed necessary so to do in order to effectuate the scheme to appropriate an additional five per cent of amounts recovered by legal proceedings, his testimony loses much of its probative force.

*Thirdly,* the appellant also charges that the defendants wrongfully retained ten per cent of salvage recoveries claimed to have been collected through the defendants' freight claim agency, withholding knowledge from the plaintiff that this percentage was retained in cases where services of the freight claim agency were unnecessary and in fact not rendered.

When the defendants started the freight claim agency as an adjunct of the work they were doing for the plaintiff, the agreement for their compensation in this branch was originally that they should receive ten per cent of whatever salvages were collected, but that the total of the compensation to be received should not exceed $5,000 a year. Subsequently, on the plea of the defendants that with this limitation the freight claim agency was being run at a loss, the plaintiff was induced to consent that defendants should receive ten per cent on all salvages collected, without a limitation as to maximum compensation, and as a part of this agreement the plaintiff naturally stipulated: " We wish to point out in this connection that we look to you to see that nothing is placed in the hands of the Merchants Freight Claim Agency, which it is unnecessary to place there, and that losses, as far as possible, be settled on a partial loss basis, rather than by paying a total loss and subsequently recovering salvage."

In support of the claim that the defendants adopted a scheme of charging ten per cent on amounts collected on matters which were unnecessarily placed in the Merchants Freight Claim Agency, the appellant introduced in evidence a letter from the defendants to the freight claim agency reading as follows: " From today on you will receive from time to time claims indexed from the Boston office, which you are requested to take no action upon unless instructed to do so by the writer. Simply make a record of same as is customary, placing in a separate file, and when we are advised of recoveries by the assured, we will give you instructions for the closing, and credit your account with the customary fees. Please take due regard of this advice and act in accordance with instructions."

This letter was pasted in the cover of the freight claim agency

register, and one of the defendants, in an attempt to suppress it, had torn it from the freight claim agency register before producing that book in court. The defendants claim that as this letter was written at a time when the freight claim agency commissions were limited to $5,000 a year, the letter did not have any force, because they could not then retain more than the $5,000. In so urging, however, the defendants overlook the fact that they might wish to be certain to have the commissions amount to at least that amount. A further answer is that when the limitation of compensation was removed, there was no attempt to revoke this instruction.

As an example of this alleged practice of taking ten per cent for services in obtaining salvage recoveries without having performed any actual service, the appellant cites the case of Jeremiah Williams & Co., woolen merchants in Boston. In behalf of this contention the plaintiff adduced evidence that in 1918 Jeremiah Williams & Co. had certain claims against the railroads, and without any assistance from the defendants, or the freight claim agency, or the attorneys Levy & Becker, said Williams & Co. had collected and remitted through John C. Paige & Co. approximately $16,800 in drafts to the order of the Insurance Company of North America, which were received by the defendants and then turned over to the freight claim agency. The latter then deducted approximately $1,680 commissions and sent the proceeds back, less the commissions, to the defendants, who remitted this sum to the plaintiff. In an effort to offset this proof, the defendants sought to show in connection with three of the claims collected by Jeremiah Williams & Co. (who apparently maintained a very efficient system of collection on their own account) that the freight claim agency had assisted in the collection of the same. There is, however, a fair question that even in these three claims out of a total of twenty-six claims the freight claim agency had really rendered no service. This adds color to the letter above referred to wherein the defendants instructed the freight claim agency to take no action on Boston claims " unless instructed to do so by the writer," except to credit the fees.

The reason for this letter appears to lie in the custom in Boston for the assured to recover salvages by their own efforts and remit the same intact to the defendants. All assured who received payment of losses from the defendants were required to sign a uniform receipt voucher reciting that the payment was a loan to be repaid without interest in whole or in part as recovery might be had, and providing: " We agree to press our claim against the carrier for settlement of the loss and to refund the above loan as soon as settlement has been effected by us." In Boston, apparently,

**84** Insurance Co. of North America *v.* Whitlock.   No. 2.

First Department, March, 1926.                    [Vol. 216

the assured were accustomed to carry out their undertaking and to collect and remit salvages without any aid from the defendants.

The foregoing facts are amply sufficient to entitle the plaintiff to an interlocutory judgment for an accounting. In fact, the plaintiff would be entitled to such an accounting upon demand as a matter of course, since the relation existing between an insurance company and a general agent is fiduciary. In *Potomac Insurance Co.* v. *Kelly* (173 App. Div. 791) McLaughlin, J., writing for the court, said:

" Plaintiff is a fire insurance company, with offices in Washington, D. C. Defendant is a resident of New York city. On the 12th of January, 1909, he was appointed by the plaintiff its agent for the United States and Canada, excepting the District of Columbia and its immediate vicinity, for a term of five years, under a written contract which fixed his compensation at thirty-seven and one-half per cent of the net premiums received on policies written through his office. Defendant agreed, for the compensation stated, to establish an agency, maintain an efficient and capable field and office force, to give his personal attention to the management, and to render to the plaintiff monthly statements or accounts. Immediately following the execution of the contract the defendant entered upon the discharge of his duties and continued to act as plaintiff's agent until February 17, 1913. He issued and canceled policies on behalf of the plaintiff, collected premiums, adjusted and paid losses, and from time to time rendered statements to the plaintiff of the policies written and the amount of moneys collected and disbursed.

" The evidence clearly established that acting under this contract his relation to the plaintiff was a fiduciary one and the action lies for an accounting. The burden is upon him to show that he has turned over to the plaintiff all of the moneys collected by him and to which it is entitled. (*Marvin* v. *Brooks*, 94 N. Y. 71.) The fact that he rendered statements from time to time, which were retained without objection, does not deprive the plaintiff of its right to have a full and complete account of defendant's dealings if it so desires. (*Jordan* v. *Underhill*, 91 App. Div. 124; *Frethey* v. *Durant*, 24 id. 58.) To obtain an accounting it is not necessary for the plaintiff to show that anything will be found due. It is sufficient that the relation exists between the parties and this entitles the plaintiff to a full and complete statement of defendant's acts as agent."

The question finally to be considered, therefore, is the effect of the release given by the plaintiff to the defendants.

Since, as noted, the defendants bore a fiduciary relationship

to the plaintiff, there was a duty upon the defendants to disclose to the plaintiff all material facts connected with the matters in charge of the defendants.   Not only was there a failure on the part of the defendants so to do, but there was an actual suppression by affirmative action of certain facts.

In *Plews* v. *Burrage* (274 Fed. 881) Plews and Burrage made a contract by which Burrage agreed to pay five per cent of the profits of a mining property to be acquired and which had been brought to his attention by Plews.   Plews sued on the agreement. Burrage pleaded that for £500 Plews had released his rights under the contract.   At the time this settlement was made Burrage had failed to disclose favorable opinions of mining engineers about the property, the status of negotiations and other matters.   The Circuit Court of Appeals unanimously reversed the District Court, which sustained the defense, and said (at p. 885): "We cannot sustain the defendant's proposition that Burrage, when trading with Plews as to his rights as a co-profit-sharer, was under no duty of disclosure."   Any other result would sanction "a means of legalized moral fraud.   * * *   We hold that if, as is alleged and by the demurrer admitted, Burrage procured a settlement with Plews as to his profit-sharing rights, concealing by silence from Plews facts material to enable Plews to judge of the value of those rights, such settlement is invalid for fraud."

In *Kirchner* v. *New Home Sewing Machine Co.* (135 N. Y. 182) the plaintiff, who had been the defendant's agent in the sale of sewing machines, brought the action to recover damages for a forcible eviction from his store and for injuries to his property in the store.   The defendant proved a general release under seal, executed by the plaintiff after the cause of action arose.   The court held that this release was not conclusive or unavoidable as matter of law, saying: "Generally speaking, whatever proofs would be regarded as sufficient to enable the plaintiff to maintain an action for the reformation of the release, so as to except from its provisions the demand in suit, would be available to him in this action by way of avoidance of its terms.   * * *   Upon such an issue evidence   * * *   of the ignorance of the plaintiff of the injury to his property is important.   The fraud of the defendant may have been purely passive.   An intentional concealment by its officers and agents of the purport of the instrument, or of the destruction of or injury to plaintiff's property, which he was seeking by means of the settlement and release to regain, or an omission to inform him of his mistake, if they perceived that he was in error as to its provisions, would be sufficient to estop the defendant from insisting upon any advantage to be derived from the mistake of the plaintiff."

The defendants further urge that the plaintiff had in its possession for many months prior to the giving of the release, data from which could have been ascertained knowledge of the facts. Where, however, there is a fiduciary relationship, there can be no question of contributory negligence in reposing confidence in the one from whom good faith is due. Contributory negligence is not a defense to an action for willful fraud and deceit. A person who is negligent in reposing confidence in a wrongdoer is not thereby prevented from recovering his property from the latter. As was said by EARL, J., in *Albany City Savings Inst.* v. *Burdick* (87 N. Y. 40, 49): " It is certainly not just that one who has perpetrated a fraud should be permitted to say to the party defrauded when he demands relief, that he ought not to have believed or trusted him." And in *Hudson Iron Co.* v. *Mershon* (149 App. Div. 556) MILLER, J., writing for the court, said: " It is not the law of this State that contributory negligence is a defense to an action for fraud and deceit or that a person who is negligent in reposing confidence in a wrongdoer may not recover his property from the latter."

It follows that the judgment should be reversed, with costs, and an interlocutory judgment for an accounting entered, with costs. Proposed orders, reversing findings inconsistent with this opinion and containing appropriate new findings, to be exchanged and submitted for settlement upon notice.

CLARKE, P. J., DOWLING, MERRELL and McAVOY, JJ., concur.

Judgment reversed, with costs, and interlocutory judgment for an accounting ordered, with costs. Proposed orders reversing findings inconsistent with opinion and containing appropriate new findings to be exchanged and submitted for settlement upon notice.