Michael Catalano, J.
Plaintiffs move for summary judgment of $10,000.
Parties agree on the facts. May 8, 1964 deceased applied for life insurance. May 11, 1964 defendant United Funds, Inc., issued its “ Periodic Investment Plan with insurance to acquire united accumulative fund shares ” number 31-4-22165 in the face amount of $10,000 to deceased and his wife, providing for insurance on the life of the plan holder under a group form policy, which was issued by defendant Hancock. May 27, 1965 deceased died. Claim was made against Hancock on said policy, but on August 6,1965 Hancock denied liability because deceased did not reveal his true medical history as requested in the application for insurance, representing that he had never had any ailment, injury or disease within the last five years which had resulted in his being away from work 10 or more consecutive working days.
Plaintiffs contend that the defense of misrepresentation is not available unless the insured’s application or a copy thereof is returned to the insured or received by him pursuant to sections 142 and 161 of the Insurance Law; such was not done here.
The deceased, himself a physician, was hospitalized in the Buffalo General Hospital May 24 to 26,1961 for two days; June 4 to 16, 1961 for 12 days; June 3 to 12, 1963 for nine days; June 20 to 25, 1964 for five days; March 13 to May 27, 1965, when he died.
While deceased was hospitalized, his attending physician, Dr. Marvin Bloom, states in the hospital progress notes: ‘ ‘ With his knowledge of the fact that he has lymphosarcoma he has requested that sterilization be accomplished. Dr. Milch and Dr. Kutzman and I have agreed to support his request.” Each hospitalization was for lymphosarcoma, from which cause he died.
After being in the hospital from June 4, to 16, 1961, deceased did not return to work for one more week thereafter; after being hospitalized from June 3 to 12, 1963, he did not work for four more weeks thereafter.
Article 7 of the Insurance Law, “ The Insurance Contract,” covers all kinds of insurance (§§ 140-174). “ The term ‘ insurance contract,’ as used in this chapter [Cons. Laws, ch. 28] shall, *871 except as provided in subsection two, be deemed to include any agreement or other transaction whereby one party, herein called the insurer, is obligated to confer benefit of pecuniary value upon another party, herein called the insured or the beneficiary, dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event. A fortuitous event is any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the control of either party.” (Insurance Law, § 41, subd. 1.)
Section 46 of the Insurance Law, ‘‘ Kinds of insurance authorized,” provides:
“ The kinds of insurance which may be authorized in this state, subject to the other provisions of this chapter, are set forth in the following paragraphs. * * * Each of the following paragraphs indicates the scope of the kind of insurance business specified therein;
“ 1. ‘ Life insurance, ’ meaning every insurance upon the lives of human beings and every insurance appertaining thereto. The business of life insurance shall be deemed to include the granting of endowment benefits; additional benefits in the event of death by accident or accidental means; additional benefits operating to safeguard the contract from lapse, or to provide a special surrender value, in the event of total and permanent disability of the insured; and optional modes of settlement of proceeds.”
Group life insurance is included within this definition of “ life insurance;” no specific mention of “ group life insurance ” is made in said section 46, except that it clearly is covered in catchall subdivision 23 of that section: “ ‘ Substantially similar kind of insurance, ’ meaning such insurance which in the opinion of the superintendent is determined to be substantially similar to one of the foregoing kinds of insurance and thereupon for the purposes of this chapter shall be deemed to be included in that kind of insurance.”
Group life insurance is life insurance; it is not substantially similar to any other type of insurance authorized by section 46. (See the 22 varieties contained in section 46.)
Section 204 of the Insurance Law, ‘ ‘ Group life insurance defined” * * * provides: “ 1. The term ‘ group life insurance, ’ as used in this chapter, shall mean that form of life insurance covering any one of the groups hereinafter specified in this subsection, which is written under a policy issued to the policyholder ah hereinafter defined, and which in all other respects conforms to the requirements of this subsection. The term *872 ‘ certificate holder/ as used in this chapter in relation to a group life insurance policy, shall mean the person to whom a certificate evidencing such insurance is issued under any such policy, as hereinafter provided. Any life insurance company authorized or licensed to do business in this state may deliver in this state policies of group life insurance only as follows: ”.
Here, the deceased held a certificate evidencing life insurance under a policy held by the Fund and issued by Hancock.
Here, the type of life insurance authorized is the “ optional modes of settlement of proceeds.” (See Insurance Law, § 46, subd. 1.) The certificate issued to the deceased and his widow by the Fund states: ‘ This is to certify that in consideration of the payment by Bertram M. Helfaer (Insured) & Sally A. Helfaer, JTN BOS of (500.00) Dollars to United Funds, Inc., at Kansas City, Missouri (hereinafter referred to as ‘ Corporation ’), receipt of which amount is hereby acknowledged, it is hereby agreed that from the net proceeds of any and all payments which may be made hereon”; and under “ Terms and Conditions, ’ ’ the certificate states: 10. Insurance. Arrangements have been made with a life insurance company for insurance on the life of the Planholder under a group form of policy * * * insurance is furnished at group cost . to the Corporation.”
Here, the deceased was called ‘Insured ’ ’ under his certificate, which to him was his policy or evidence of insurance contract, ultimately to be paid by a life insurance company.
Section 142 of the Insurance Law, “ Policy to contain entire contract ” provides: “ 1. Every policy of life, accident or health insurance, or contract of annuity, delivered or issued for delivery in this state shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application, or other writings, unless a copy thereof is endorsed upon or attached to the policy or contract when issued. No application for the issuance of any such policy or contract shall be admissible in evidence unless a true copy of such application was attached to such policy when issued. ’ ’
This statute covers three kinds of insurance; (1) “ Life insurance,” (2) “Annuities,” and (3) “Accident and health insurance,” as defined in section 46 of the Insurance Law. It merely mentions “ the parties ” to the “ entire contract.” No mention is made of “policyholder,” “certificate holder,” “insured,” “ insurer,” “beneficiary,” or the like; they are read into the statute by definition and legislative intent.
*873 One reported ease allowed the application for insurance which was not attached to any policy or certificate to be admitted in evidence because the “ certificate holder ” and his “ certificate ” were not included in section 142 (Cutler v. Hartford Life Ins. Co., 51 Misc 2d 286); another case held: In the light of the common purpose of .sections 142 and 161, delivery of a copy [of the application] to the estate is not compliance * * * Compliance after death is late.” (Robins v. Hancock Mut. Life Ins. Co., 49 Misc 2d 731, 734.)
When the Legislature intended to make section 142 of the Insurance Law not applicable to a certain kind of insurance, it specifically so stated. (See ibid., §■§ 457 and 473, subd. [b], excluding fraternal benefit societies.) Nowhere in the statutes of this State, including the Insurance Law, is group life insurance specifically excluded from the operation of section 142. Every valid reason exists for including group life insurance within the protection of that section.
The purpose of subdivision 1 of section 142 (formerly § 58) in requiring the entire contract to be stated in the policy, and not covered by documents included by mere reference, was not to relieve the insurer but to protect the insured and his beneficiaries; the Legislature did not intend to make the latters ’ situation harder. (Bible v. Hancock Mut. Life Ins. Co., 256 N. Y. 458, 464. See, also, Lampke v. Metropolitan Life Ins. Co., 279 N. Y. 157, 162; Massachusetts Mut. Life Ins. Co. v. Lord, 18 A D 2d 69, 71, affd. 13 N Y 2d 1096; Wageman v. Metropolitan Life Ins. Co., 24 A D 2d 67, 71.) This statute precludes the insurer from asserting the false representations contained in an application not attached to the policy as a defense to an action seeking enforcement of the insurance contract as written. (Abbott v. Prudential Ins. Co., 281 N. Y. 375, 383.)
The policy must contain the entire contract; and all applications, statements and' agreements must be physically indorsed thereon or attached thereto, so the insured may know all its terms by reading it or having it read, then correct wrong answers to questions asked by the medical examiner, for such is the insured’s duty. (Minsker v. Hancock Mut. Life Ins. Co., 254 N. Y. 333, 338.)
The real issue here is not what words did the Legislature use in subdivision 1 of section 142 of the Insurance Law, but what did the Legislature intend to accomplish, whom did it intend to protect, the insured (certificate holder) or the policyholder (issuer of the certificate under a policy held by it) ?
The history of this subdivision 1 of section 142 was clearly to protect the insured or his beneficiary, be he called in this *874 case a ‘ ‘ certificate holder ’ ’ or otherwise. The certificate, as here, usually includes the basic terms of the policy.
Section 161 of the Insurance Law “ Group life insurance policies and certificates; standard provisions,’’ provides:
“ 1. No policy of group life insurance shall be delivered or issued for delivery in this state unless it contains in substance the following provisions or provisions which in the opinion of the superintendent are more favorable to certificate holders, if any, or not less favorable to certificate holders and more favorable to policyholders:
“ (a) A provision that the policy shall be incontestable after two years from its date of issue, except for non-payment of premiums by the policy holder and except for violation by the person insured of the conditions of the policy relating to military or naval service; and that no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such person’s lifetime and in no event unless it is in a written instrument signed by him copy of which is or "has been furnished to such person or to his beneficiary.”
This section 161 goes beyond subsection 1 of section 142 but is not in conflict with it. The latter mandates that an application, to be admissible in evidence, must be attached (by copy) to the policy when issued; the former, as a last resort, mandates that in no event may it be used in contesting the validity of the insurance unless it be written and signed by the insured, a copy of which is or has been furnished to him or his beneficiary. Being in pari materia, these two sections can and should be read together.
Here, no copy of the application was attached to the certificate, nor was it furnished to the insured or his beneficiary. Defendants failed to comply with either mandate.
Section 143 of the Insurance Law “ Non-conforming contracts * * * ” provides: * * * “3. # * * the court shall enforce such policy or contract as if its provisions were the same as tho'se specified in this chapter unless the court finds that its actual provisions were more favorable to policyholders at the date when the policy was issued.”
Again, the Legislature evidenced its intent to favor the policyholder and those claiming under him by stating a minimum standard for the policy or contract of insurance, but granting to the insurer the privilege of being more favorable towards its policyholder therein.
*875 Motion is granted, without costs. Since damages are not certain, an immediate hearing shall be held before the court, or before the court and a jury, whichever may be proper in the discretion of the Calendar Justice, to whom this issue of damages is transferred for assignment; then, upon the assessment thereof, a judgment in that amount is directed in favor of the estate of the deceased.