(June 29, 1967)

ANNE CUTLER, Individually and as Administratrix of the Estate of JULIUS CUTLER, Deceased, Appellant, v. HARTFORD LIFE INSURANCE COMPANY et al., Respondents.

Ughetta, Acting P. J., Brennan and Hopkins, JJ., concur; Christ, J., dissents in part and votes to (1) modify the order so as to deny defendants' motion for summary judgment and (2) to reverse the judgment, with the following memorandum, in which Rabin, J. concurs: This is an action by the administratrix of the estate of Julius Cutler, plaintiff's deceased husband, to recover upon an insurance certificate on his life which the three defendant insurers had issued on the basis of a group policy they had given to Crosby Plans Corporation. Crosby is a seller of mutual fund shares and it had procured the policy so as to arrange for insuring the lives of its installment-plan share purchasers. Cutler was one of such share purchasers and he procured such insurance,

represented by this certificate. Under the terms of the insurance contract, the amount payable progressively declined so as to remain equal to the declining balance of the amount owed by the purchaser on his fund shares; and the proceeds were payable to Crosby's agent, against the purchaser's remaining indebtedness on the fund shares. At Cutler's death, he owed $16,700 upon an $18,000 purchase. In a joint answer, the insurers have set forth a defense that Cutler, in applying for his insurance, misrepresented the state of his health in his written application or statement of insurability. In their papers on their motion for summary judgment they have set forth facts to substantiate this defense. In opposition, appellant submitted an affidavit by her attorney in which it is contended that a copy of Cutler's written statement was not attached to the certificate and that, therefore, subdivision 1 of section 142 of the Insurance Law rendered the statement inadmissible in evidence. On this appeal appellant also relies on section 161 (subd. 1, par. [a]) of the Insurance Law. Section 142 applies to all insurance policies and provides that, if the policyholder's application is not "attached to such policy when issued", it is not admissible in evidence (subd. 1). Section 161 applies specifically to group life insurance policies and requires every policy to provide that "no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance * * * unless it is in a written instrument signed by him copy of which is or has been furnished to such person or to his beneficiary" (subd. 1, par. [a]). Such provision must be read into every such policy which does not contain it (Insurance Law, § 143, subds. 1, 3). The legislative policy underlying these provisions of sections 142 and 161 is to resolve the one-time controversy as to the efficacy of policy provisions that the insurer's agent's knowledge of the falsity of the insured's representations is not imputable to the insurer (*Axelroad* v. *Metropolitan Life Ins. Co.*, 267 N. Y. 437, 443–445; *Robins* v. *Hancock Mut. Life Ins. Co.*, 49 Misc 2d 731, revd. on other grounds, 27 A D 2d 188) and to permit the insured (or someone close to him with an interest in the insurance) to review his insurability statement and correct any misstatements which may have been made in it. (*Minsker* v. *Hancock Mut. Life Ins. Co.*, 254 N. Y. 333, 338–339; cf. *Bible* v. *Hancock Mut. Life Ins. Co.*, 256 N. Y. 458). The provisions as to attachment in section 142 is referable to the application of the policyholder, Crosby, and not to the certificate covering Cutler's life; and, therefore, it is not applicable (cf. *Robins* v. *Hancock Mut. Life Ins. Co.*, *supra*; *Layman* v. *Continental Assur. Co.*, 416 Pa. 155). Cutler's statement was not in existence at the time the policy was issued and could not have been attached to the policy "when issued". There is no statutory requirement that such a statement be attached to a certificate. As to section 161, that section was also urged in *Robins* (*supra*). The Special Term there held that its requirement that a copy of the statement be "furnished" was not satisfied by delivery to the insured's decedent's "estate" after his death or by the fact that the insured had retained a copy. On appeal, the Appellate Division, First Department, held that the insurance "beneficiary", one of the entities to whom the statement could be given, was the policyholder (who happened to be Crosby there as well as in the instant case), on the theory that the insurance proceeds were payable against the balance owing to the policyholder on the installment sale of the mutual shares in that case; and that therefore the statutory requirement was satisfied. I disagree with that holding for two reasons. First, section 204 (subd. 1, par. [c]) of the Insurance Law impliedly defines the insurance "beneficiary" of the very type of group life insurance here in question as

someone other than the policyholder, by providing that any insurance proceeds in excess of the contract amount shall be paid by the policyholder to " a beneficiary named by the debtor" (the installment purchaser). Therefore, " policyholder " and " beneficiary " are not the same entities. Second, the purpose of furnishing the statement to the assured or his beneficiary, to review the statement and make any needed corrections, cannot be accomplished where the statement is furnished to the policyholder, who ordinarily would never have any personal knowledge sufficient to accomplish this purpose. Although I do not agree with all the reasoning in *Helfaer* v. *Hancock Mut. Life Ins. Co.* (51 Misc 2d 869), the result reached there is in accordance with the views herein stated. In the case at bar there was no insurance beneficiary named by Cutler. The form completed by him entitled " Designation of Beneficiary " and naming plaintiff as " beneficiary " pertained, at best, only to the disposition of the mutual shares. Neither is Cutler's estate the beneficiary. Respondents' use of different language in the policy than that required by (subd. 1, par. [a] section 161) substituting his [the insured's] " estate " for his " beneficiary " as one of the persons to whom the statement may be furnished, is not binding, because that nonconforming language is less favorable to the certificate holder (see, Insurance Law, § 161, subd. 1; *Robins* v. *Hancock Mut. Life Ins. Co.*, 49 Misc 2d 731, 733, revd. on other grounds, 27 A D 2d 188, *supra*). In my opinion, the only way respondents could have complied with section 161 was by furnishing a copy of Cutler's statement to him. Respondents may not avail themselves of subdivision 2 of section 161, which provides that none of the provisions of subdivision 1 (relating to a certificate issued under any group life insurance policy) are applicable to a policy issued " to a vendor or creditor * * * under the provisions of which no individual certificates are issued or are issuable." Under the terms of the policy issued to Crosby, certificates were required to be issued and they were issued. Similarly, there is no discretionary room for equitable considerations based on the fact that Cutler made no " errors " to be corrected, having only made a deliberate effort to defraud the insurers. Section 161 mandates a paramount doctrine, that is, incontestability if a copy of the statement is not furnished in accordance with its provisions. Although section 161 and not section 142 is applicable to the situation, summary judgment may not be given to plaintiff on the basis of section 161 since she has not offered any factual proof to show that respondents did not comply with the statutory mandate to furnish a copy of the statement to her husband. On the other hand, in the interests of justice, summary judgment should not be permitted to stand against her, because respondents have not contended that Cutler's insurability statement was actually furnished to him. [51 Misc 2d 286.]