Breitel, J.
Arising on cross motions for summary judgment, the issue is whether a purchaser of mutual fund shares on the installment plan, who optionally purchased diminishing term life insurance under a group policy, was entitled to receive a copy of his fraudulent insurance application statements in order that they be available to the insurers as a defense. The Supreme Court, Bangs County, denied plaintiff’s motion and granted *248 defendant insurers’ motion. The Appellate Division affirmed in a Per Curiam opinion, two Justices dissenting in part.
Plaintiff, the widow of the deceased purchaser of mutual fund shares, sues individually and as his administratrix. Deceased was a lawyer who had retired because of cardiac illness and, after his retirement, had been engaged as a sales representative with a registered dealer for Crosby Plans Corporation, the seller of the mutual fund shares on the installment plan. In December, 1964 he sold himself the plan, subscribing for shares aggregating $18,000. Under the plan he had the option to purchase diminishing term life insurance to cover the decreasing balance of payments due from him in purchase of the shares. He so elected, and made out the insurance application and statements, in which he falsely denied that he had had any heart disease or disorder, or that he had missed work due to illness for any 10-day period during the past five years. In fact, he had had a series of heart attacks since 1958, had been hospitalized, had been confined to his home for months, and was evidently a cardiac disease sufferer at the time of his application. He also understated his age by one year, which avoided a medical examination otherwise required by the insurers’ practice. Deceased died April 7, 1965, some four months after the insurance was issued, leaving an unpaid balance of the fund purchase plan (and, therefore, the balance payable under the insurance contract) of $16,700.
Despite the alleged fraud in the application, plaintiff contends that the insurers are liable on the insurance contract because, contrary to the relevant statutes, no copy of the insurance application and statements was ever attached to the certificate of insurance or delivered to the insured. The insurers, on the other hand, contend that they complied with the statutes by returning a copy of the insurance application to Crosby, the group policyholder and asserted creditor beneficiary of the insurance contract.
The issue is one of first impression in this court, although it has arisen recently in other cases involving identical, or similar, plans (Robins v. John Hancock Mut. Life Ins. Co., 27 A D 2d 188,189, app. withdrawn 20 N Y 2d 772; Helfaer v. John Hancock Mut. Life Ins. Co., 30 A D 2d 102, revg. 51 Misc 2d 869). For the reasons to be discussed, the order insofar as it granted *249 defendant insurers summary judgment should he reversed, hut the denial of summary judgment to plaintiff should be affirmed. There are issues of fact relating to whether deceased received or retained a copy of his insurance application or statements, and whether, because of his status as a sales representative for a registered dealer in the sale of the instant insurance, an estoppel or defense of fraud may bar the claim.
Deceased had subscribed to purchase shares in Fidelity Trend Fund, Inc., a mutual fund, and agreed to pay $18,000. He elected to purchase insurance under the investment plan and on the basis of his application was found eligible. Under the plan, the insurers, pursuant to jointly prepared group life insurance policies issued to Crosby as policyholder, undertook that in the event any planholder (like deceased) died before fulfilling his payments, the insurers would pay the balance due. As already noted, deceased died owing $16,700 on account of the mutual fund shares purchased. Deceased, through a registered securities dealer (North American Planning Corporation, of which he was also a sales representative), had submitted his application and life insurance statements to Crosby. These were forwarded to the insurers who agreed to insure deceased’s life. A joint certificate of insurance was thereupon sent to Crosby for transmittal to deceased, and copies of deceased’s application and statements were returned to Crosby’s custodian-bank under the plan. The certificate forwarded to Crosby and by it to deceased was evidence of the insurance coverage but did not purport to set forth the terms of the protection (Insurance Law, § 204, subd. 1).
Under the share purchase plan, but not as to the insurance, deceased’s wife by bis option was designated as the beneficiary to receive the shares upon his death. The group policies and the joint certificate of insurance, on the other hand, did not in express terms nominate any beneficiary. Instead they provided that Crosby, through its custodian-bank, was to receive the proceeds of the insurance in accordance with the balance due under the schedule of payments.
In considering the relevant statutes, distinctions must he drawn between certificates of insurance and policies of insurance, as well , as between individual and group policies of insurance. Moreover, creditor beneficiary insurance and other group life *250 insurance must be distinguished, as must insurance obtained primarily to benefit the creditor rather than the debtor. The respective positions taken by the litigants turn to some extent on these distinctions, and in them lies the root of whatever difficulty there is in resolving the.issue here.
Defendant insurers take a literal position. The insurance, they argue, is in the creditor beneficiary class, set up under a group policy. Hence, Crosby, as the recipient under the terms of the policy of the insurance proceeds, is the beneficiary, even though not so termed. Delivery of the insurance application and statements to Crosby through its agent-custodian is the delivery required by the statute. While deceased was the insured he was not the policyholder, rather Crosby was. His wife was the beneficiary of the purchased shares but a stranger to the insurance contract. She, therefore, had no legal interest in the insurance or even any standing to sue with respect to any claim for the proceeds.
Plaintiff widow, on the other hand, relies on the economic purposes and effects of the transaction. Unlike some creditor insurance, the insurance here was obtainable only on the debtor’s expressed option, at his additional expense. He would exercise his option only if he was interested in creating a debt-free and fully paid fund of assets for his wife. Crosby was a seller of shares and insurance interested only in commissions on the sales of each. The “ creditor ” Crosby carried no risk of loss on the sales contract except for the slight loss of commissions, because the shares would not be delivered unless they were fully paid. Indeed, the mutual fund shares were still in another corporation (Fidelity Trend Fund). Thus, Crosby had no substantial interest in the existence or validity of the insurance. Hence, the return of copies of the insurance application and statements to Crosby, and then only through its banking custodian, would never serve to induce a verification of the answers to questions in the application. In ultimate fact, plaintiff argues, deceased was the insured and his wife the beneficiary of the insurance, just as he was expressly the plan subscriber and she was the beneficiary of the shares on his death.
For many years now the Insurance Law has required that copies of applications for life insurance be attached to and returned with the policy if the insurer, during the limited *251 period of contestability, is to be entitled to use application misstatements, even fraudulent ones, in defending against any claim or in seeking to cancel the policy (§ 142). The purpose of the statute is to protect insureds from loss of their insurance after many years of premium payment without knowledge of infirmities in the contract, especially when the applications are filled out by avid salesmen of insurance, of even if the insurance is procured by their own fraud (Archer v. Equitable Life Assur. Soc., 218 N. Y. 18, 22-25, discussing the predecessor section, § 58).
8). Of course, with respect to group life policies the situation is complicated by the fact that the insured does not receive a copy of the policy. Hence, as to such insureds the law requires that they or their beneficiaries receive copies of the individual applications for coverage under the group policy (Insurance Law, § 161, subd. 1, par. [a]). Such a provision, of a provision * ‘ more favorable to certificate holders, if any, or not less favorable to certificate holders and more favorable to policyholders ”, must be contained in all policies of group life insurance.
The filed approved policy form in this case contained an additional provision, as follows: “ Statements made by the Creditor or by the individual Debtors shall be deemed representations and not warranties, and no statement made by the Creditor or by any Debtor on their behalf shall be used in defense to a claim under this Policy, unless it is contained in a written application, or in an Individual Statement signed by the Debtor, or in a Statement to Medical Examiner signed by the Debtor, or in the Life Insurance Statement portion of the application for the plan of the Creditor, with insurance, for accumulation of shares as provided in the eligible class contained herein, and a copy of the instrument containing the statement is or has been furnished to the Debtor or to his estate.” (Emphasis added.)
The foregoing language tracks substantially the mandatory provision of section 161 applicable to group policies. Thus, the statute, in requiring the furnishing of individual applications for coverage, refers to “ such person [the insured life] or to his beneficiary ”, while the policy provides for furnishing the statements to the debtor or his estate.
Defendant insurers argue that the policy provision permits the copy statements to be furnished to the estate at any time before *252 an action is brought on the policy; but that does not make much sense. The purpose in furnishing copies of statements to purchasers of insurance, insureds, or beneficiaries is to afford them, as the case may be, the opportunity to correct material errors, or to expose the invalidity of the contract. Thus, interested persons may avoid either being misled as to the insurance protection obtained or paying premiums for years in ignorance of facts nullifying the supposed protection. The reference to “ estate ” can mean only that the copy statements are to be furnished to the estate in the event of death before all papers in the transaction have been delivered in the regular course of events. The insurers’ view would reduce the function of the clause to a mere discovery device, one not very important under the existing liberal practice. Moreover, if it meant what the insurers say, the substituted policy clause would be less favorable to the certificate holder than the statute requires and would, therefore, be invalid.
Section 161 requires certificates “ setting forth a statement as to the insurance protection ” to be issued to individual insureds under group policies, but it exempts those creditor or vendor policies which do not, by their terms, provide for certificates (§ 161, subd. 2). In this case, however, the insurers did provide in their policies for the issuance of certificates to the planholders who elected to have insurance. Thereby the policies were subjected to the statutory requirements affecting certificates. But on any view, the statutory exemption applies only to those provisions governing certificates issued under group insurance and never affects the duty to furnish applications, a duty which exists regardless of whether or not certificates are issued (§ 161, subd. 1, pars, [a], [d]). And apart from the statute, the policies in suit so provided.
If there were no policy provision requiring copies of applications to be furnished to the debtor or his estate, or if the policy provision were construed as insurers argue, there would still be the statutory provision requiring copies of applications to be furnished to the insured or to his beneficiary (§ 161, subd. 1, par. [a]). It is, therefore, relevant to determine who was the beneficiary of the insurance in suit.
In analyzing the transaction between the other parties to it and deceased, it is evident too that this was not typical creditor *253 insurance in which the primary object is the protection of the creditor. Here, Crosby was ready to sell mutual fund shares whether or not insurance was purchased. It, of course, preferred to sell insurance because such sale provided additional commissions and the insurance also protected the commissions on the sale of the shares. But the option was deceased’s. Moreover, he could terminate the plan, and thereby the incidental insurance, at any time, thus demonstrating that this was not an instance of a creditor protecting an account receivable. It only took that form. This may explain why Crosby was never named as a “ beneficiary ’ ’ in either the certificate of insurance, the purchase plan certificate, or the group policies. To be sure, it was entitled through its custodian to receive the proceeds, but that was for the benefit of the subscriber to the share purchase plan whose named beneficiary was the wife. This view is contrary, of course, to that taken in Robins v. John Hancock Mut. Life Ins. Co. (27 A D 2d 188, 189, supra) and Helfaer v. John Hancock Mut. Life Ins. Co. (30 A D 2d 102, revg. 51 Misc 2d 869, supra).
On this analysis, the true beneficiary of the insurance was the wife, despite the nominal designations in the certificate of insurance and the group policies of Crosby as the recipient of the insurance proceeds. It was the wife who would reap economic benefit from the insurance rather than Crosby (again except for the commissions, which were defeasible in any event by the planholder’s terminating the plan before full payment). It is she who chooses to sue rather than Crosby, which has little interest in the outcome of the action and evidently has made no effort to intervene. In truth, as between Crosby and the wife, the wife is the intended beneficiary, or, at least, the ultimate intended beneficiary (cf. Restatement, 2d, Contracts [Tent. Draft No. 3, April 18, 1967], § 133, including Comments a, c, and d, indicating the importance of the manifested intention and surrounding circumstances in determining who are the actual intended beneficiaries, rather than relying merely on the form of the transaction or who receives the performance from the promisor; Restatement, Contracts, § 136, subd. [2]; Restatement, 2d, Contracts [Tent. Draft No. 3, April 18, 1967], § 136, subd. [1]).
*254 Needless to add, the situation would be quite different in a typical creditor insurance contract, where the creditor requires the insurance for his own protection, and the debtor, or his estate, is only incidentally benefited by the discharge of the debt by the payment of insurance covering his life.
Consequently, it is concluded that the insurers may not interpose the fraudulent insurance application statements in defense of the claim unless they were furnished to deceased within a reasonable time during the period of contestability. But this conclusion does not warrant granting summary judgment to plaintiff on her motion.
In the first place, it does not appear from the papers that deceased never received a copy, or that he as a sales representative did not retain a copy. That issue can be resolved only by the taking of further proof (see Robins v. John Hancock Mut. Life Ins. Co., 27 A D 2d 188,190, supra).
Secondly, further proof may well show that deceased, as sales representative in selling the mutual fund shares, was an agent for the insurers, albeit twice removed through the registered dealer (National) and the plan promoter (Crosby). As an agent, particularly where he was dealing with himself, he would have had a duty to disclose fully all facts relevant to the transaction (Pratt v. Dwelling House Mut. Fire Ins. Co., 130 N. Y. 206, 216-218; Insurance Co. of North America v. Whitlock, 216 App. Div. 78, 84-85; 29 N. Y. Jur., Insurance, §§ 453, 470; 44 C. J. S., Insurance, § 155; Ann.—Writing Policy on Own Property, 83 A. L. R. 1509, 1522; Restatement, 2d, Agency, § 390; 4 Couch, Insurance [2d ed.], §§ 26:346, 26:361). In an insurance policy, the nature of the risk would, of course, be such a material fact (Pratt v. Dwelling House Mut. Fire Ins. Co., supra). If a breach of this duty by deceased can be shown the insurers are entitled to void the policy (Pratt v. Dwelling House Mut. Fire Ins. Co., supra; Insurance Co. of North America v. Whitlock, supra; Ingram v. Fidelity-Phoenix Fire Ins. Co., 16 F. 2d 251; Westchester Fire Ins. Co. v. Fitzpatrick, 2 F. 2d 651, 654; 29 N. Y. Jur., Insurance, §§ 455, 456). Put another way, even if a fraudulent purchaser would have a defense based on the statutory or policy requirement, the fraudulent agent of the company would be subject in an action or by way of counterclaim to damages for the breach of his fiduciary duty (Insurance Co. *255 of North America v. Whitlock, supra; Restatement, 2d, Agency, § 399, subd. [g]; 29 N. Y. Jur., Insurance, § 470; also, see, Dunn v. Commercial Union Ins. Co., 27 A D 2d 240, 242). Where, as here, the purchaser and agent are the same, the insurer’s right to counterclaim against the agent would operate to defeat the right of the purchaser to recovery.
Moreover, fraud extrinsic to the insurance application, which is excluded for failure to attach it to the policy, may still ground a defense in an action on the policy (Abbott v. Prudential Ins. Co., 281 N. Y. 375, 380-382; Archer v. Equitable Life Assur. Soc., 218 N. Y. 18, 26, supra).
Accordingly, the order should be modified, with costs, to deny defendant insurers summary judgment and the order should otherwise be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Keating and Jasen concur.
Order modified, with costs, in accordance with the opinion herein and, as so modified, affirmed.