NANA R. GOZAN, Formerly Known as NANA R. KRAKOWER, Appellant, v MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent.

First Department, October 30, 1975

*Samuel W. Sherman* of counsel *(Leon Wasserman,* attorney), for appellant.

*James P. Corcoran* of counsel *(Samuel C. Cantor,* attorney), for respondent.

LUPIANO, J. Plaintiff, the wife of Arnold R. Krakower, now deceased, brings this action to recover the sum of $40,000, as his beneficiary under a life insurance term policy which had been offered to members of the New York County Lawyers' Association. Decedent was an attorney and member of the association. On May 9, 1968, he made application for the policy at issue and, at the same time, applied for $5,000 insurance on the life of his wife, plaintiff herein. The application consisted of three parts—(a) an application and (b) a medical questionnaire for the insurance on the life of Mr. Krakower, and (c) an application for a Dependents Term Rider on the life of his wife. The subject policy was issued on June 27, 1968, and the insured, Arnold R. Krakower, died on April 4, 1969 from a condition known as polycythemia, a rare blood disease. The death occurred within the contestable period provided in the policy. A copy of all three parts of the application was attached to the policy when issued. There is no dispute that contrary to representations made on his application and medical questionnaire ([a] and [b] above), decedent failed to disclose a history of polycythemia of over 20 years' duration. As a consequence, the defendant insurance company disclaimed, tendering back the premiums paid.

At trial, the jury returned a special verdict that as to the copy of the application attached to the issued policy, only that part which consisted of the application for the Dependents Term Rider on the life of Mrs. Krakower was illegible. The issue presented is whether the defendant insurance company has complied with section 142 of the Insurance Law and thus may raise the defense of material misrepresentation. Subdivision 1 of section 142 of the Insurance Law provides in pertinent part: "Every policy of life * * * insurance * * * delivered or issued for delivery in this state shall contain the *entire* contract between the parties, and *nothing* shall be incorporated therein by reference to any * * * application, or other writings, unless a copy thereof is endorsed upon or attached to the policy or contract when issued. No application

for the issuance of any such policy or contract shall be admissible in evidence unless a *true* copy of such application was attached to such policy when issued" (emphasis supplied). The Court of Appeals has aptly noted that "[f]or many years now the Insurance Law has required that copies of applications for life insurance be attached to and returned with the policy if the insurer, during the limited period of contestability, is to be entitled to use application misstatements, even fraudulent ones, in defending against any claim or in seeking to cancel the policy (§ 142). The purpose of the statute is to protect insureds from loss of their insurance after many years of premium payment without knowledge of infirmities in the contract, especially when the applications are filled out by avid salesmen of insurance, or even if the insurance is procured by their own fraud *(Archer v Equitable Life Assur. Soc.,* 218 NY 18, 22–25, discussing the predecessor section, § 58) * * * The purpose in furnishing copies of statements to purchasers of insurance, insureds, or beneficiaries is to afford them, as the case may be, the opportunity to correct material errors, or to expose the invalidity of the contract. Thus, interested persons may avoid either being misled as to the insurance protection obtained or paying premiums for years in ignorance of facts nullifying the supposed protection" (Cutler v Hartford Life Ins. Co., 22 NY2d 245, 250–252; see *Lampke v Metropolitan Life Ins. Co.,* 279 NY 157, 163; *Hurley v John Hancock Mut. Life Ins. Co.,* 247 App. Div. 547, 549; *Becker v Colonial Life Ins. Co.,* 153 App. Div. 382; cf. *Helfaer v John Hancock Mut. Life Ins. Co.,* 26 NY2d 699). Embraced within the statutory term "true copy" is the requirement that such copy be legible. The issue of whether the attached copy is legible is properly within the jury's province (see 1 Couch, Insurance 2d § 4:19; see, also, *New York Life Ins. Co. v Miller,* 73 F2d 350, 355–356; *Arter v Northwestern Mut. Life Ins. Co. of Milwaukee,* 130 F 768). The impediment of part of the copy of an application being illegible deprives the insurer of use of application misstatements in defending against the policy. The Legislature has declared that only the furnishing of a true (and legible) copy of the application suffices to apprise the insured as to exactly what representations were made. "For the protection of the assured the statute requires that when the assured receives a policy of life insurance he may be able to read, in the policy itself, *every provision* of the contract the insurance company has made *and every material representation* which he may have made to induce the company to issue

the policy * * * The statute defines the form which the parties must use to express their intention. If the application or any other writing is attached to the contract, it becomes a part thereof. If the application or other writing is not attached it has no more effect than oral promises or oral representations" (Abbott v Prudential Ins. Co., 281 NY 375, 383; (emphasis supplied). It is important to note that we are not concerned herein with issues of fraud extrinsic to the insurance application, for such issues may still be available as a defense apart from the application excluded for failure to obey the mandate of section 142 of the Insurance Law (see Cutler v Hartford Life Ins. Co., 22 NY2d 245, 255, supra; Abbott v Prudential Ins. Co., supra, pp 380–383; Archer v Equitable Life Assur. Co., 218 NY 18, 26, supra . To reiterate: "When the statutes require the attachment to the policy of a copy of the application therefor, they mean that a true, correct, legible, and entire copy of the application be so made a part of the contract" (1 Couch, Insurance 2d § 4:18).

Notwithstanding the special verdict of the jury, the trial court viewed the defendant as entitled to judgment dismissing the complaint. This view was predicated on the court's apprehension that the application for the Dependents Term Rider was, in actuality, a separate policy of insurance. However, clause (3) of said application provides: "This application and any rider issued on the basis of such application shall form a part of the Policy and the Insured will undertake to attach them to the Policy" (emphasis supplied). In compliance with this clause, the "Dependents Life Insurance Coverage" is denominated a "Rider attached to and forming a part of Policy 3800–7405" (the deceased's policy). The above language is that of defendant and is plain and susceptible of but one meaning. Even were it not plain, it must be construed strictly against the defendant. It effectively precludes defendant from now asserting that the application for and the rider itself constitute a separate policy.

Although the result of this rationale seems harsh insofar as the defendant insurer is concerned, the simple fact is that "[t]he very dispute involved on this appeal could have been prevented had the insurance company complied with the statute" (Blatz v Travelers Ins. Co., 272 App Div 9, 15). As the application for the policy at bar was in three parts and as one of those parts was illegible in the copy of such application attached to said policy, the defendant insurer has failed to comply with section 142 of the Insurance Law. Therefore, the

application for the issuance of the policy at bar is not admissible in evidence under the circumstances herein (Insurance Law, § 142, subd 1).

Accordingly, the order of the Supreme Court, New York County (GREENFIELD, J.), entered March 1, 1974, vacating and setting aside the unanimous special jury verdict in favor of plaintiff, denying plaintiff's motion for judgment on the special verdict and finding that the defendant is entitled to judgment dismissing the complaint, should be reversed, on the law, with costs and disbursements, and the special jury verdict should be reinstated and plaintiff's motion for judgment on the special verdict granted; further, the judgment of the Supreme Court, New York County, entered May 9, 1974, dismissing the complaint should be vacated.

STEVENS, P. J., and CAPOZZOLI, J., concur; KUPFERMAN and NUNEZ, JJ., dissent and would affirm on the opinion of GREENFIELD, J., at I.C. Part 9.

Order, Supreme Court, New York County, entered March 1, 1974, reversed, on the law, and the special jury verdict reinstated and plaintiff's motion for judgment on the special verdict granted; and judgment of said court entered on May 9, 1974, reversed and vacated. Appellant shall recover of respondent $60 costs and disbursements of these appeals.

Settle order on notice.